[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 172 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 173 
The facts in this case are undisputed, and it is a question of law whether the statue and sun-dial were real or personal property. The plaintiffs claim they are personal property, having purchased them as such under an execution against Thom. The defendant claims they are real property, having bought the farm on which they were erected at a foreclosure sale under a mortgage, executed by Thom before the erection of the statue and sun-dial, and also as mortgagee in possession of another mortgage, *Page 174 
executed by Thom after their erection. The claim of the defendant under the mortgage sale is not impaired by the fact that the property in controversy was put on the place after the execution of the mortgage. (Corliss v. Van Sagin, 29 Maine R., 115;Winslow v. Merchants' Ins. Co., 4 Metc. R., 306.) Permanent erections and other improvements, made by the mortgagor on the land mortgaged, become a part of the realty and are covered by the mortgage.
In deciding whether the property in controversy was real or personal, it is not to be considered as if it were a question arising between landlord and tenant, but it is governed by the rules applicable between grantor and grantee. The doubt thrown upon this point by the case of Taylor v. Townsend (8 Mass.R., 411) is entirely removed by the later authorities, which hold that, as to fixtures, the same rule prevails between mortgagor and mortgagee as between grantor and grantee. (15Mass., 159; 4 Metc. R., 306; 3 Edw. Ch. R., 246; 1Hilliard on Mortgages, 294, note f, and cases there cited; andsee Bishop v. Bishop, 1 Kern., 123, 126.)
Governed, then, by the rule prevailing between grantor and grantee, if the statue and dial were fixtures, actual or constructive, they passed to the defendant as part of the realty.
No case has been found in either the English or American courts, deciding in what cases statuary placed in a house or in grounds shall be deemed real and in what cases personal property. This question must therefore be determined upon principle. All will agree that statuary exposed for sale in a workshop, or wherever it may be before it shall be permanently placed, is personal property; nor will it be controverted that where statuary is placed upon a building, or so connected with it as to be considered part of it, it will be deemed real property and pass with a deed of the land. But the doubt in this case arises from the peculiar position and character of this statue, it being placed in a court yard before the house, on a base erected on an artificial *Page 175 
mound raised for the purpose of supporting it. The statue was not fastened to the base by either clamps or cement, but it rested as firmly on it by its own weight, which was three or four tons, as if otherwise affixed to it. The base was of masonry, the seams being pointed with cement, though the stones were not laid in either cement or mortar; and the mound was an artificial and permanent erection, raised some two or three feet above the surrounding land, with a substantial stone foundation.
If the statue had been actually affixed to the base by cement or clamps or in any other manner, it would be conceded to be a fixture and to belong to the realty. But as it was, it could have been removed without fracture to the base on which it rested. But is that circumstance controlling? A building of wood, weighing even less than this statue, but resting on a substantial foundation of masonry, would have belonged to the realty. A thing may be as firmly affixed to the land by gravitation as by clamps or cement. Its character may depend much upon the object of its erection. Its destination, the intention of the person making the erection, often exercise a controlling influence, and its connection with the land is looked at principally for the purpose of ascertaining whether that intent was that the thing in question should retain its original chattel character, or whether it was designed to make it a permanent accession to the lands.
By the civil law, columns, figures and statues, used to spout water at fountains, were regarded as immovable, or real (Pandects, lib. 19, tit. 1, § 17, vol. 7, by Pothier,
107) though it was inferred that statues resting on a base of masonry were not immovable, because they were there, not as part of the construction, but as ornaments. (Corp. Juris Civ., byKreigel, lib. 19, tit. 1, § 17; Poth. Pand., 109; Burrill'sLaw Dic., "Affixus.") But Labeo held the rule to be "ea quæperpetui usus causa in ædificiis sunt, ædificii esse; quæ vero adpræsens, non csse ædificii; thus making the kind *Page 176 
of property depend upon the question whether it was designed by the proprietor to be permanent or temporary, or, as it was generally called by civilians, "its destination." (Corp. Jur.Civ., by Kreigel, lib. 19, tit. 1, § 17.)
And Pothier says that when, in the construction of a large vestibule or hall, niches are made, the statues attached ("attachées") to those niches make part of the house, for they are placed there ad integrandam domum. They serve to complete that part of the house. Indeed, the niches being made only to receive the statues, there will fail to be anything in the vestibule without the statues; and he says, it is of such statues that we must understand what Papimanus says: "Sigilla et statuæaffixæ, instrumento domus non continentur, sed domus portiosunt. (Pothier de Communauté, § 56.)
By the French law, statues placed in a niche made expressly to receive them, though they could be removed without fracture or deterioration, are immovable, or part of the realty. (CodeNap., § 525.) But statues standing on pedestals in houses, court-yards and gardens retain their character of "movable" or personal. (3 Touillier, Droit Civil de France, 12.) This has reference to statues only which do not stand on a substantial and permanent base or separate pedestal made expressly for them. For when a statue is placed on a pedestal or base of masonry constructed expressly for it, it is governed by the same rule as when placed in a niche made expressly to receive it, and is immovable. (2 Répertoire Générale, Journal du Palais, byLedru Rollin, 518, § 139.) The statue in such case is regarded as making part of the same thing with the permanent base upon which it rests. The reasons for the French law upon this subject are stated by the same author in the same work, page 517, § 129, where the rule is laid down with regard to such ornaments as mirrors, pictures and statues, that the law will presume the proprietor intended them as immovable, when they cannot be taken away without *Page 177 
fracture or deterioration, or leaving a gap or vacancy. A statue is regarded as integral with the permanent base on which it rests and which was erected expressly for it, when the removal of the statue will offend the eye by presenting before it a distasteful gap ("vide choquant"), a foundation and base no longer appropriate or useful. (Id., § 139.) Things immovable by destination are said to be those objects movable in their nature, which, without being actually held to the ground, are destined to remain there perpetually attached for use, improvement or ornament. (2 Ledru Rollin, Répertoire Générale, 514, § 30.)
I think the French law, as applicable to statuary, is in accordance with reason and justice. It effectuates the intention of the proprietor. No evidence could be received more satisfactory of the intent of the proprietor to make a statue a part of his realty, than the fact of his having prepared a niche or erected a permanent base of masonry expressly to receive it; and to remove a statue from its place, under such circumstances, would produce as great an injury and do as much violence to the freehold, by leaving an unseemly and uncovered base, as it would have done if torn rudely from a fastening by which it had been connected with the land. The mound and base in this case, though designed in connexion with the statue as an ornament to the grounds, would, when deprived of the statue, become a most objectionable deformity.
There are circumstances in this case, not necessary under the French law, to indicate the intention to make the statue a permanent erection, but greatly strengthening the presumption of such intent. The base was made of red sand stone, the same material as the statue, giving to both the statue and base the appearance of being but a single block, and both were also of the same material as the house. The statue was thus peculiarly fitted as an ornament for the grounds in front of that particular house. It was also of colossal size, and was not adapted to any other destination *Page 178 
than a permanent ornament to the realty. The design and location of the statue were in every respect appropriate, in good taste, and in harmony with the surrounding objects and circumstances.
I lay entirely out of view in this case the fact that Thom testified that he intended to sell the statue when an opportunity should offer. His secret intention in that respect can have no legitimate bearing on the question. He clearly intended to make use of the statue to ornament his grounds, when he erected for it a permanent mound and base; and a purchaser had a right so to infer and to be governed by the manifest and unmistakable evidences of intention. It was decided by the court of cassation in France, in Hornelle v. Enregistr. (2 Ledru Rollin,Journal du Palais, Répertoire, c., 214), that the destination which gives to movable objects an immovable character results from facts and circumstances determined by the law itself, and could neither be established or taken away by the simple declarations of the proprietor, whether oral or written. There is as much reason in this rule as in that of the common law which deems every person to have intended the natural consequences of his own acts.
There is no good reason for calling the statue personal because it was erected for ornament only, if it was clearly designed to be permanent. If Thom had erected a bower or summer-house of wicker work, and had placed it on a permanent foundation in an appropriate place in front of his house, no one would doubt it belonged to the realty; and I think this statue as clearly belongs to the realty as a statue would, placed on the house, or as one of two statues placed on the gate posts at the entrance to the grounds.
An ornamental monument in a cemetery is none the less real property because it is attached by its own weight alone to the foundation designed to give it perpetual support. *Page 179 
It is said the statues and sphinxes of colossal size, which adorn the avenue leading to the temple of Karnak at Thebes, are secured on their solid foundations only by their own weight. Yet that has been found sufficient to preserve many of them undisturbed for four thousand years (Taylor's Africa, 113 etseq.); and if a traveler should purchase from Mehemet All the land on which these interesting ruins rest, it would seem quite absurd to hold that the deed did not cover the statues still standing, and to claim that they were the still unadministered personal assets of the Ptolemies, after an annexation of such long duration. No legal distinction can be made between the sphinxes of Thebes and the statue of Thom. Both were erected for ornament, and the latter was as colossal in size and as firmly annexed to the land as the former, and by the same means.
I apprehend the question, whether the pyramids of Egypt or Cleopatra's Needle are real or personal property, does not depend on the result of an inquiry by the antiquarian whether they were originally made to adhere to their foundations with wafers, or sealing wax or a handful of cement. It seems to me puerile to make the title to depend upon the use of such or of any other adhesive substances, when the great weight of the erection is a much stronger guaranty of permanence.
The sun-dial stands on a somewhat different footing. It was made for use as well as for ornament, and could not be useful except when firmly placed in the open air and in the light of the sun. Though it does not appear that the stone on which it was placed was made expressly for it, it was appropriately located on a solid and durable foundation. There is good reason to believe it was designed to be a permanent fixture, because the material of which it was made was the same as that of the house and the statue, and because it was in every respect adapted to the place.
My conclusion is, that the facts in the case called on the judge of the circuit to decide, as a matter of law, that the *Page 180 
property was real, and to nonsuit the plaintiff; and if I am right in this conclusion, the judgment of the supreme court should be reversed.
GARDINER, C.J., and RUGGLES, SELDEN, ALLEN and EDWARDS, Js., concurred in the conclusions of the foregoing opinion.