(Hamilton County, Common Pleas Court.)
January, 1897.

## FREDERICK BURKHARDT v. CASPER V. HOPPLE et al.

---

Where a lessee for five years erects without contract with the lessor, or his consent, upon the leased premises, a substantial frame buiding to be used as an office in connection with the lessee's business; but which was capable of being used, and was in fact also used for other purposes and other business than lessee's, and was firmly attached to posts let into the ground, such building is not a trade fixture which lessee may remove at the end of the term, but passes under a mortgage made by the lessor before the lease was executed.

---

HOLLISTER, J.

Action to foreclose a mortgage on a lot fronting on Spring Grove Avenue and also on Johnson street on which the Stock Yards abut on the west. After the mortgage was made, the widow and heirs-at-law of the mortgagor leased the property for five years with privilege of purchase to one who soon afterwards assigned to the Farmers' & Drovers' Stockyard Co., a corporation which after about eighteen months occupancy conveyed to Hopple. The company had no office, and for that purpose erected on the lot, flush with the street, a substantial one-story frame building of three rooms fronting on the street twenty-three feet, and in depth about forty-five feet. The ground is low, some two and one-half feet below the street. The house has no cellar, but three rows of posts, eight to the row, let into the ground two and one-half to three feet, made of the round trunks of small ceder trees about ten inches in diameter, support the structure. On the tops of each row of posts are laid substantial sills 8x12 inches in breadth and thickness and forty-five feet long which are nailed to the posts. On these sills the house is built. This construction is common to the houses fronting on the same street in the immediate vicinity. There are no fireplaces in the rooms, and for a chimney clay tiles are used, supported by brackets. There is one front door, opening on the street, and two side doors which are reached by a plank sidewalk of substantial construction, the planks running transversely, the ends on one side being firmly nailed to the south sill of the house, and on the other similarly nailed to the house next south, and but a few feet distant. The building is well lighted by windows, and is well and substantially constructed at a cost of about $1500.

The mortgagee claims that this house is subject to his lien. Hopple claims that it is a trade fixture, and that he is entitled to remove it from the land.

To remove the building it will be necessary, either to violently pull it from its fastenings, or to saw off the posts. This can be done without substantial injury to the building or the grounds; but would leave the standing posts, and would necessarily destroy the sidewalk and remove its fastenings to both houses.

The building was used for eighteen months as an office, but after that time the front room was in use as a saloon, and has continued to be so used to this day, while the two rooms in the rear, or perhaps but one of them, were rented as offices to commission men.

The mortgage carried to the mortgagee all of the interest of the mortgagor, whose rights extended to the heavens above and to the nether regions below. The presumption is that the building belongs to the realty. Kinkead v. United States 150 U. S., 483, wherein there is cited with approval the language of Madigan v. Taylor, 108 Mass., 396:

"If one erects a permanent building, like a dwelling house, upon the land of another voluntarily and without any contract with the owner, it becomes a part of the realty, and belongs to the owner of the land."

Among the multitude of adjudications

covering the subject of fixtures, it is difficult to find one which presents the question under circumstances quite analogous to the case at bar. A slight shading of facts sometimes differentiates cases seemingly alike, and at best we can only search for general rules and apply them to the special facts in the case. It may be said, however, that the case differs from those classes of cases of which Meagher v. Hayes, 152 Mass., 228; Wight v. Gray, 73 Me., 27; Medecker v. Warring, 12 N. Y., 170; Savings Bank v. Kercheval, 65 Mo., 682; Lynde v. Rowe, 12 Allen, 100; Tifft v. Horton, 53 N. Y., 377, are instances where the structure was erected with some agreement with the owner of the ground, or of the mortgagee, touching the character which should be given the building, whether realty or personalty; for, so far as appears, the element of agreement does not come into this case. It is true that the company sold the building to Hopple, but this could in no way affect the mortgagor or the mortgagee without their knowledge or consent.

The leading case in Ohio on the sub ject is Teaff v. Hewitt, 1 Ohio St., 511, where it was held that a thing is a fixture when there is a concurrence of several facts.

"1. Actual annexation to the realty.

"2. Application to the use, or purpose, to which that part of the realty with which it is connected, is appropriated.

"3. The intention of the party making the annexation, to make a permanent accession to the realty.''

Applying these rules, it appears that the building is attached to the realty. That part of the realty was not appropriated to the peculiar use of dealing in live stock, nor to any use excepting to support the building erected upon it. It, as realty, was no more appropriated to that business than to any other which required a structure to protect those engaged in business from the rain, the cold, and the heat. Every business not transacted on the curb stone must have a locus where the business man may hang his hat and keep his books.

Neither the lot nor the building were peculiarly adapted to the business of the company, for they might have been used for any business. The most important and common use to which a city lot is put is to support a building constructed upon it.

Thus the second condition is satisfied.

What was the intention of the company when it constructed the building?

Owning large stock-yards and dealing in live-stock, it was necessary that the company should have headquarters near by convenient for its business. Being a corporation with power of perpetual succession, it is fair to presume that it desired permanent headquarters.

Its members, or some of them, took a five years' lease of a lot conveniently lo-cated, and the lease contained a privilege of purchase. Thereupon the lessee conveyed to the corporation, and it is not an unfair inference that the privilege was inserted with the idea that the corporation should eventually own the lot, an inference strengthened by the compact and substantial nature of the house which, on its cedar foundation, is capable of withstanding the elements for many years to come. It was built for an office, and is well adopted to that use; but it is susceptible of almost any use to which a building may be put, and the front room, from its shape and size, is admirably suited to the saloon buisness to which it was devoted after being used but eigh-teen months as the office of the company, while the rear rooms afforded suitable accommodation for the commission men who now occupy them.

The defendants sought to prove by the three members of the building committee, of the company, that the building was erected in such a way that it might easily be removed, and with he idea of its ultimate severance from the land. While, under the rule that where the intent with which an act was done by the witness is drawn in question, he may testify as to such intent, Coal Co. v. Davenport, 37 Ohio St., 194; Barrett v. Hart, 42 Ohio St., 41; Pierce v. White, 22 B., 98, it would seem as if those witnesses should be heard; yet, as it is said in Teaff v. Hewitt, at page—that;

"This intention (to make a permanent accession to the freehold) being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation had been made" it is clear that they may not testify further than to describe the purpose for which the structure was built, i. e., for an office, and must leave the question of their intention to remove, to be determined by the circumstances of the case. In Fortman v. Goepper, 14 Ohio St., 558, 567, Judge White says:

"The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on upon the premises, and the premises or locus in quo. The former is personal in its nature; and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it; whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subsequent to the realty, and acquire and retain its legal character.''

This rule was applied in Wagner v. Railroad Co., 22 Ohio St., 563. The company erected piers firmly imbedded in the ground on the land of the plaintiff. When the railroad was abandoned, the question arose whether or not the company could remove the piers. It was held that it could, and the reason was that the piers were constructed as a part of the continuous line of railway the business of which was to transport passengers and freight. Says Judge White, at page 578:

"The part of the road built on the premises of the plaintiff in error, disconnected from the other parts of the road, could not be operated and would be useless as a railroad. Nor could it serve any useful purpose as an appurtenance to the land on which it was built."

And the learned judge remarks further that not only must the purpose for which the annexation was made be considered, but also: "The relation of the parties concerned to the property, both before and after the annexation." The original purpose was to provide an office for the company, yet the relation of the constructors, their assignee, and Hopple to the property was not that of persons engaged in business using a chattel as a trade-fixture, for we find them renting the building for saloon and other purposes, wholly disconnected with and foreign to their own peculiar calling.

Boilers and engines, attached as they usually are to the realty, are held to be fixtures and to be part of the land, because they may be used in connection with any kind of business to which the building is adapted and which needs such motive power; but a particular machine devoted to and only applicable to a certain kind of business, as of manufacturing operated by such power, is a trade fixture and personal property, because of its adaptabiliy to and use in a certain trade.

This seems to me a fair deduction from Case Manufacturing Co. v. Garven, 45 Ohio St., 289, and from Barker v. Pressed Brick Co., 3 N. P., 230, wherein Judge Sayler held that the boiler and engine of a brick plant were fixtures; but that a brick machine which weighed several tons, but which could be taken apart and moved without injury to the building, was a trade fixture.

This building then was not a trade fixture because of its peculiar adaption to the business of trading in live stock, and the conduct of the constructors and of those claiming under them shows that the intention was to put the building to such use as should appear expedient to which the building from its location and construction was adapted.

It is true that it has been held that a building constructed for a school house would be removed by the lessee; but the case is clearly distinguishable from the case at bar in that the building was in continuous use for the purpose for which it was constructed to the very day of the termination of the lease. Wittenmeyer v. Board of Education, 10 Ohio St., 119.

In Benton v. Robert, 2 Eas 88, the tenant was permitted to take away the building constructed by him for the purposes of his trade; but a strong element in the case was that he remained in possession, exercising his calling.

It would be useless and very unsatisfactory to multiply authority. However, in additon to the cases cited, the following authorities tend to establish the conclusion reached in this, that this building is not a chattel, but a part of the realty and passes under the mortgage: McFadden v. Allen, 134 N. Y., 482; Keck v. Austin, 46 Ill., 156; Franklin v. Moulton, 5 Wie., 1. A decree may be taken accordingly.

Kittredge & Wilby, for Plaintiff.

Burch & Johnson, for Defendants.