In re GROSSINGER'S ASSOCIATES, a New York Limited Partnership, Debtor.

QUICKWAY METAL FABRICATORS, INC., Plaintiff,

v.

GROSSINGER'S ASSOCIATES, a New York Limited Partnership, as Debtor in Possession, Defendant.

Bankruptcy No. 89 B 20943.
No. 90 ADV. 6050.

United States Bankruptcy Court, S.D. New York.

March 15, 1991.

Buckley, Treacy, Schaffel, Mackey & Abbate, New York City, for Quickway Metal Fabricators, Inc.; Gary J. Mueller, of counsel.

Barbara Balaber–Strauss, P.C., White Plains, N.Y., for trustee.

## DECISION ON COMPLAINT TO RECLAIM FROM TRUSTEE A PORTE COCHERE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Quickway Metal Fabricators, Inc. ("Quickway"), a creditor in this aborted Chapter 11 case, seeks to reclaim from the Chapter 7 trustee a Porte Cochere, or structural steel canopy, that was erected and affixed to the front of the former Grossinger's Hotel building in Liberty, New York. The Grossinger's Hotel and Country Club was sold by the Grossinger family to the debtor, Grossinger's Associates, a New York Limited Partnership, which planned to rehabilitate the property with the assistance of a construction manager. Quickway was engaged to erect a structural steel Porte Cochere in front of the main building and lobby, which it did. However, Quickway claims that it was not paid in full for the project and, therefore, has commenced an adversary proceeding in which Quickway alleges that title to the steel not permanently installed continues to remain with Quickway so that Quickway should be permitted to reclaim the removable steel.

## FINDINGS OF FACT

1. On December 17, 1989, the debtor filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. On July 30, 1990, on motion of the United States trustee, the debtor's Chapter 11 case was converted for liquidation under Chapter 7 of the Bankruptcy Code and a trustee in bankruptcy was thereafter appointed and qualified to act.

2. Prior to the commencement of the Chapter 11 case, on March 10, 1989, Quickway and YA–GDM Construction Venture ("YA–GDM"), the debtor's construction manager for the Grossinger's rehabilitation project, entered into a written contract, pursuant to which Quickway was to provide and install structural steel for a Porte Cochere to be affixed to the front of the main building and lobby at the former Grossinger's Hotel.

3. Quickway is a specialty contractor, engaged in fabricating and installing structural steel, including the structural steel Porte Cochere involved in this case. A Porte Cochere is a large canopy which, when affixed to a building such as the debtor's hotel, enables cars and trucks to drive under the canopy so that guests and luggage may enter and exit in all kinds of weather.

4. Paragraph 15 of the Quickway contract provides:

15. Ownership of Material Prior to Installation. All material placed on the project by the Contractor (and not paid by the owner) prior to its incorporation into the Project shall be owned unconditionally by the Contractor and shall be free of the lien of any third party.

4. Quickway alleges in support of its complaint for reclamation that the material supplied and erected has neither been incorporated into the project nor has payment been made.

5. The trustee in bankruptcy alleges in her answer that Quickway was paid $65,835.00 for the erection of the Porte Cochere and has asserted certain affirmative defenses and a counter-claim for reimbursement for materials furnished by Quickway that were not approved in accordance with the contract in question. The trustee in bankruptcy also alleges that Quickway failed to submit a written de-

mand in writing for reclamation as required under 11 U.S.C. § 546(c).

6. Between March and August of 1989, Quickway fabricated the steel needed for the Porte Cochere and installed the structural support, consisting of four support columns permanently affixed to the main building. The columns were embedded in cement blocks poured into the ground and in pockets cut into the building wall. Quickway attached the balance of the steel beams to the support structure, welding, fitting and bolted the parts to the existing support columns and structure. The steel for the roof covering was delivered to the job site, but had not been installed when the debtor's Chapter 11 petition was filed. Thus, approximately 90% of the work called for under the contract had been completed before the Chapter 11 petition was filed.

7. The nuts in the anchor bolts in the ground were tightened, but not permanently affixed so that they could be loosened later on for flexibility to match up the remaining beams and roofing in order to complete the job. The remainder of the work to be done, consisting of alignment, final bolting and installation of the roof section, could be completed in one day, according to the testimony of Quickway's vice president in charge of manufacturing. He also said that the entire structure was designed specially for the Grossinger's project.

8. The debtor's engineering expert testified that the Porte Cochere was a permanent structure and an integral part of the main building, based on the architectural plans and designs for the building. It would take seven laborers approximately two weeks to remove the Porte Cochere from its present location.

9. According to the records of the general partner of the debtor's construction manager, approximately 96% of the invoiced amounts for the Porte Cochere were paid, which fact was disputed by Quickway's president. In any event, the trustee has not produced any cancelled checks or other evidence that any portion of Quickway's claim was paid. However, this point is not material to the instant case, which involves a reclamation commenced by Quickway and not the trustee's objection to a proof of claim. Proof of full payment on behalf of the debtor would be a complete defense to Quickway's action and proof of partial payments, including the specific amounts paid, would serve as a partial defense to the total amount of Quickway's proof of claim. Because there was no proof that any specific amounts were paid to Quickway on behalf of the debtor, and because the proceeding is not in the nature of an objection to Quickway's proof of claim, Quickway's complaint for reclamation will be resolved solely on its merits without determining the allowed amount of Quickway's claim.

10. Based on the evidence at the hearing it has been established that the Porte Cochere was permanently annexed to the real estate and the main building at the Grossinger's job site. It was clearly appropriated to the use intended, namely to serve as a Porte Cochere, or canopy attached to the main building just outside the lobby. Quickway and the debtor's construction manager intended that the Porte Cochere was to be permanently annexed to the real estate and the building. Indeed, the structure is still in place and has withstood storms and bad weather since it was erected in early 1989. Hence, the question to be decided is whether the Porte Cochere is a fixture annexed to the real estate.

11. The fact that the steel structure may be taken down by seven laborers in approximately two weeks, or that the nuts have not been permanently tightened, does not detract from its status as a permanent fixture. A removal of part of the structure, while leaving in place the four columns and the support structure permanently attached to the main building, which Quickway concedes is a permanent part of the building, will result in the removal of part of the structural composition of the main building at the job site.

12. Quickway may not remove any portion of the Porte Cochere which it affixed to the main building at the job site without undermining the integrity of the existing

building and real estate to which the Porte Cochere was affixed.

13. The structural steel for the roof and other items of equipment which are not attached to the Porte Cochere are not fixtures annexed to the real estate and may be reclaimed by Quickway.

14. The trustee did not establish by a preponderance of the evidence the allegation in her counterclaim that the debtor expended sums for work and materials furnished by Quickway that were not approved. Indeed, the trustee produced no cancelled checks or credible proof of any payments by the debtor, or on its behalf, with respect to Quickway's services. Additionally, there was no credible proof that the debtor disapproved of any of the work, labor, or services furnished by Quickway.

## DISCUSSION

■ Initially, it should be observed that the contract in question required the erection of a Porte Cochere for the main building at the Grossinger's job site, and not just the supplying of structural steel. Therefore, Quickway does not occupy the status of a seller of goods and need not satisfy the requirements of 11 U.S.C. § 546(c) in order to reclaim a portion of the structure which it erected. Pursuant to 11 U.S.C. § 546(c), "a seller of goods that has sold goods to the debtor in the ordinary course of business of such seller's business ... [may] reclaim such goods if the debtor has received such goods while insolvent ..." A ten-day written reclamation demand is required. In the instant case, Quickway did not just sell steel beams to the debtor; the contract called for the erection of a Porte Cochere.

> Respondent was not contracting simply for the steel beams but in essence for their erection and installation with the transfer of the title to the steel a mere incident of the over-all transaction, a mere accessory to the work and labor to be performed....

*Schenectady Steel Co., Inc. v. Trimboli Construction Co., Inc.*, 43 A.D.2d 234, 237, 350 N.Y.S.2d 920 (3rd Dept.1974), *aff'd*, 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d

875 (1974). Hence, the trustee's reliance on 11 U.S.C. § 546(c) is misplaced. Therefore, consideration must be given to Quickway's basic premise that reclamation should be granted because Quickway retained title to the Porte Cochere.

### Title To The Erected Structure

■ Quickway bottoms its claim to ownership of the Porte Cochere on the language in Paragraph 15 of the contract in question, which provides that all materials placed on the project prior to incorporation into the project shall be owned unconditionally by Quickway. This provision simply relates to items of materials and goods before they are permanently annexed to real property and become fixtures which are regarded as part of the real property. Therefore, consideration must be given to whether or not the Porte Cochere continues as personal property or is now viewed as a permanent fixture annexed to the real estate. One of the earliest cases in New York dealing with the law of fixtures involves a statue of George Washington. In *Snedeker v. Waring*, 12 N.Y. 170, 178 (1854), a three ton statue of George Washington placed on a stone base was held to be a fixture because "the great weight of the erection is a much stronger guaranty of permanence." Manifestly, the great weight of the erection in the instant case creates the appearance of permanence, notwithstanding that the structure can be taken down by seven laborers in approximately two weeks. Similarly, in *In the Matter of Donald Maines, et al. v. Board of Assessors of the Town of Lafayette*, 125 A.D.2d 951, 952, 510 N.Y.S.2d 348 (4th Dept.1986), the court cited the *Snedeker* case with approval and held that greenhouse structures, although not embedded in the ground, were permanent fixtures because of the size and weight of the structures. "It takes six or eight hours to dismantle the greenhouses; hence, they are not readily removable.... (citation omitted)." *Id.* at 952, 510 N.Y.S.2d 348. The three-fold test for determining fixtures, and which is still the rule, was early expressed as follows:

1. Actual annexation to the realty or something appurtenant therefore. 2. Appropriation to the use or purpose of that part of the realty with which it is connected. 3. The intention of the party making this annexation, to make the article a permanent accession to the freehold—this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made. *Teaff v. Hewitt,* 1 Oh.St. 511 (1853).

In the instant case, the Porte Cochere was annexed to the realty and to the pockets cut into the main building at the Grossinger's job site. It was clearly to be used as a permanent canopy affixed to the building protecting arriving guests and others from inclement weather and bright sun. Manifestly, all parties including Quickway intended that the Porte Cochere was to become a permanent part of the main building at the Grossinger's job site. Indeed, Quickway concedes that a portion of the Porte Cochere, namely the four columns and the support structure imbedded in the ground and bolted into the front of the building, is a nonremovable, permanent annexation to the building. The Porte Cochere was included in the architectural designs and plans for the renovated building. The fact that the structure was approximately 90% complete does not detract from the point that all the parties intended the Porte Cochere to be a permanent part of the building. The size and great weight of the structure attests to the fact that the Porte Cochere is a fixture and a permanent part of the Grossinger's building. As such, it may not be removed or serve as the subject of Quickway's reclamation action.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (C).

2. The Porte Cochere which is the subject of Quickway's adversary proceeding for reclamation was permanently annexed to the main building located on the debtor's premises and, as such, is a permanent fixture which may not be removed from the real estate.

3. Quickway's complaint, which seeks a reclamation of the Porte Cochere that it erected and annexed to the debtor's main building, shall be dismissed because the Porte Cochere is a permanent fixture and may not be the subject of a reclamation proceeding.

4. The trustee's counterclaim to recover for sums expended by the debtor for work and materials furnished by Quickway without approval shall be dismissed. The trustee has failed to establish by a preponderance of the evidence the essential facts to support her counterclaim.

SETTLE ORDER on notice in accordance with the foregoing decision.