The Great Western Manufacturing Company v. Thomas Bathgate *et al.*

(Filed January 11, 1905.)

1. **FIXTURES** Real Estate—Mortgagee's Lien. Chattels attached to the realty after the execution of a mortgage of it, become a part of the mortgaged property if they are attached by the owner of the realty and as a permanent improvement of the estate, and not for mere temporary purposes.

2. **SAME.** Where machinery adapted to and suitable for the purpose of running a grist mill is purchased on condition that the same shall remain the property of the vendor until the purchase price is fully paid, and where such condition is evidenced by a conditional bill of sale drawn up and signed, but not at the time recorded as provided by the laws of this Territory, and where the premises in which such machinery is to be used are mortgaged to a third party, and where subsequent to the execution, acknowlment and recording of such real estate mortgage, the machinery purchased as aforesaid, is placed in the mill covered by said real estate mortgage, and is used as a part of said mill, and is attached to the same by nails, screws, bolts and cleats, and is used for carrying out the general purposes of said mill, and as a permanent fixture, and where such conditional bill of sale is not recorded until after the signing, acknowledging and recording of the real estate mortgage, and after said machinery is so placed in the mill and becomes a fixture therein, the lien of the real estate mortgage as to such machinery will be superior to and prevail as against the rights of the vendor under such conditional bill of sale.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*R. N. McConnell,* and *Cotteral & Horner,* for plaintiff in error.

*Charles H. Woods,* for defendant in error, *Thomas Bathgate.*

STATEMENT OF FACTS.

This was an action commenced by Thomas Bathgate by filing a petition in the district court of Logan county, on the 15th day of August, 1902. His first cause of action was upon a promissory note in the sum of $5,173.43, dated April 1st, 1899, due and payable April 1st, 1902, with interest at eight per cent per annum. The second cause of action set up a real estate mortgage of concurrent date with the above note, to secure the payment of the said sum of $5,173.43. This mortgage covered property described as follows:

"Beginning at a stake in the western limits of Southern Kansas Railroad right of way, one hundred thirty-one (131) feet, two (2) inches south, 17 degrees, 16 minutes west, from the north west corner of the Santa Fe addition to the townsite of Mulhall; thence south 17 degrees and 16 minutes, west, three hundred (300) feet to a stake; thence 72 deg., 44 min. west one hundred fifty (150) feet to a stake; thence south 44 min., east one hundred fifty (150) feet to the place of beginning, containing one acre more or less, and being a part of the northeast one quarter (1-4) of section four (4) in township 18 of range two (2) west of the Indian Meridian, being the same premises conveyed by Abel Champion by warranty deed on March 14, 1899 to James Tait, Sr. and said warranty deed is recorded in the recorder's office of Logan county, Territory of Oklahoma, on the 16th day of March, 1899, in book 16, on page 531; and also all the buildings and appurtenances added to or affixed, or which seem to have been added to or affixed to the above described realty, including one steam flouring mill of sixty (60) barrels daily capacity; boiler room; all the mill machinery including steam engine No. 7502, and all the connections and fixtures of the boiler, together with all the belts, pipes and fixtures, whether fastened to said mill or movable. of every kind and nature together with all machinery that may hereafter be placed in said mill,

together with all and singular the tenements, heriditaments and appurtenances thereunto belonging or in any wise appertaining thereto."

It was alleged in the petition that the mortgage to all of the above property had become absolute by reason of the non-payment of the principal and interest above mentioned, and the failure to pay taxes assessed against the property for the year 1902. The plaintiff in error, the Great Western Manufacturing Company, was brought in as a party to the original suit, because it appeared from the records on file in the register of deed's office of Logan county that this company had an interest as mortgagee in the above real property, by virtue of a real estate mortgage entered into between the principal defendants, James Tait, Sr. and Mary A. Tait, his wife, and the Great Western Manufacturing Company, dated the 6th day of October, 1899, and it was asked in the petition that whatever lien might be possessed by the defendant, the Great Western Company, should be decreed to be a subsequent lien to that of the plaintiff, Thomas Bathgate. The other defendants, James Tait, Sr. and Mary A. Tait, his wife, were at all times in default for want of answer, and judgment was obtained by the plaintiff below against them by default.

On the 15th day of August, 1902, the Great Western Manufacturing Company filed its answer. This answer sets up the real estate mortgage mentioned above, which was given by Tait to the Great Western Manufacturing Company. This mortgage, it appears by the recitals of this answer, was executed on the 6th day of October, 1899, and was for the principal sum of $1,463.10, with interest at eight per cent. The property covered by this mortgage is described exactly as follows:

"Beginning at a stake in west limits of Southern Kansas Railway right of way (131 )one hundred thirty-one feet, two (2) inches south; 17 degrees, 16 min., west from north west corner of Santa Fe addition to townsite of Mulhall, thence south 17 deg., 16 min., west 300 feet to a stake, thence north 72 deg., 44 min., west 150 feet to a stake, thence north 17 deg., 16 min., east 300 feet to a stake, thence south 44 deg., east 150 feet to a point of commencement; containing one acre, more or less, and being a part of the north east one fourth (1-4) of section No. four (4) in township (18) eighteen, range two (2) west, Indian Meridian.   To have and to hold the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in otherwise appertaining, forever."

By this answer it is denied that plaintiff has a mortgage on certain of the machinery set forth in Exhibit "B" attached to said answer for the reason that this machinery was furnished subsequent to the date of Bathgate's mortgage above mentioned, and it is claimed that this machinery is covered by the mortgage to the Great Western Manufacturing Company.   It is conceded in said answer of the Great Western Manufacturing Company, that Thomas Bathgate, the plaintiff in the court below, has a first and superior lien upon all of the property including the mill and machinery, with the exception of the mill machinery described in Exhibit "B", and which was sold by the said the Great Western Manufacturing Company, to Tait.   Subsequent to the filing of this answer, leave of court first having been obtained, the Great Western Manufacturing Company filed an amended answer and cross petition.   In this amended answer and cross petition it is claimed that the plaintiff in error, the Great Western Manufacturing Company, claims possession of the machinery described in Exhibit "B" by virtue of a conditional

bill of sale. This was for the sum of $1,846.05, and was executed as claimed by the Great Western Manufacturing Company on the 28th day of December, 1898, and the said bill of sale was for the same consideration as the second real estate mortgage, that is, the one given to the Great Western Manufacturing Company, and the consideration for both was the machinery bought at that time from the Great Western Manufacturing Company. The difference between the sum named as the consideration in the mortgage and the sum named in the bill of sale, something like $400.00, having been a payment of cash by James Tait, Sr., and by the return of some old machinery in trade for new received from the company. It is alleged in this answer that the real estate mortgage to the Great Western Manufacturing Company was given on the 29th day of October, 1899, and was recorded on the 29th day of October, 1899. The conditional bill of sale was executed on the 28th day of December, 1898, and was recorded in the office of the register of deeds of Logan county, on the 6th day of August, 1902. The language of the conditional bill of sale, after omitting the caption, is as follows:

"And it is hereby stipulated and it is the express condition of this agreement of sale and purchase, that until full and complete payment of the purchase money herein mentioned, and the interest thereon, whether such purchase money or any part of it is evidenced by said promissory notes, or any renewals thereof, is made, the title, ownership and right of possession of said machinery does not pass from the party of the first part; and said first party may at any time after default of any payment and agreement heretofore mentioned reduce the same to its possession, and for the purpose may with or without legal process, enter upon any premises where

the same, or any part thereof, may be, and may sever, and detach the same or any part thereof, from any freehold, land, tenement, appurtenances or fixtures to which the same may be attached, whether the same has become a part thereof or not, because of such attachment, and may remove the same, and have, hold, and retain possession thereof, with the full right thereafter to use, sell or dispose of the same for its sole use and benefit; and upon the taking of such possession, all or any claim to or upon, or interest in, or right of possession thereof, with the full right thereafter to use, sell or dispose of the same for its sole use and benefit; and upon the taking of such possession, all or any claim to or upon, or interest in, or right of possession of the said machinery or any part thereof, by the said party of the second part, or his assigns, shall cease, end and determine, and any part of the purchase money which shall have been paid, shall be forfeited to the party of the first part, and no claim therefor shall be made or maintained by the party of the second part. This contract is subject to the approval of the Great Western Manufacturing Company, at its office in Leavenworth, Kansas." (Executed by both parties.)

Plaintiff filed his reply to the second amended answer in the form of a general denial. The property in controversy was sold under order of the court, and the funds are now held subject to the decision of this court as to its proper distribution.

Afterwards, and on the 31st day of March, 1903, the above cause came on for trial, a jury being waived by both parties, and the cause was submitted to the court for decision. After hearing the evidence, and arguments of counsel and being fully advised, the court on said day found the issues in favor of the plaintiff and against the defendant and cross-petitioner. The court further found that the defendant and cross-petitioner is not entitled to the possession and

return of the property claimed to have been conditionally sold and delivered by it to the defendant, James Tait, Sr., being the machinery placed in the flour mill in Mulhall, Oklahoma Territory; that the said property became a part of the fixtures, when placed in said mill, and said defendant and cross-petitioner is not entitled to recover the value thereof, or any part of said property or its value, and is not entitled to the recovery or payment of any part of the funds now in court realized from the sale of the real estate and mill and mill property, and machinery and plant, heretofore sold by the receiver in this action, and that judgment should be rendered accordingly.

To which judgment the plaintiff in error, the Great Western Manufacturing Company, excepted, motion for new trial was regularly made and filed, which was overruled by the court, and exceptions saved, and plaintiff in error now brings the case here for review.

Opinion of the court by

IRWIN, J: The decision of this case depended in the court below, and a reversal or affirmance of the decision of the district court depends in this court, upon the question as to whether the mortgage of the defendant in error, Bathgate, was a prior and superior lien upon the mill machinery purchased by the defendant, Tait, of the Great Western Manufacturing Company, and placed in the mill subsequent to the signing and execution of the mortgage, as against the rights of the plaintiff in error, the Great Western Manufacturing Company, under their second mortgage and conditional bill of sale, executed at the time of the purchase of the mill machinery described in the record in Exhibit "B".

It is disclosed by the record that the mortgage of the de-defendant in error, Bathgate, was dated April 1st, 1899. That the mortgage of the Great Western Manufacturing Company was dated October 6th, 1899. That the conditional bill of sale from the Great Western Manufacturing Company to Tait was executed on the 28th day of December, 1898, but was not recorded in the office of the register of deeds of Logan county, until the 6th day of August, 1902, being executed prior to the mortgage from Tait to Bathgate, but not recorded until long subsequent thereto. This mortgage from Tait to Bathgate was a real estate mortgage, and the decision of the district court was based upon the finding that the property in controversy, to wit: The mill machinery described in Exhibit "B" of the record, was a fixture, and had become a part of the real estate, and consequently was subject to the real estate mortgage. This leads us to the first proposition to be considered, that is, was the mill machinery in question affixed to the real estate, and did the evidence show that fact? We take it that the question of whether property of this character is of a chattel nature, or whether it is a part of real estate, is a mixed question of law and fact, largely determined in each case by the evidence. Whether machinery such as that in controversy in this case is, or is not, fixtures, should be determined by the following tests:

First. By determining whether the machinery has been actually annexed to the realty, or something appurtenant to the realty.

Second. Whether the machinery is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated.

Third.  The intention of the party making the annexation to make a permanent annexation to the freehold.

In the case of *Stockwell v. Campbell,* 39 Conn. 362,364, the supreme court of that state said:

"This rule, which requires a physical annexation of the article to the building, we consider well settled, but the annexation need not be such as to require any actual disruption for its removal.  It may be attached to the building by mere adjustment of construction, and putting in place, as in case of doors and window blinds, which are obviously a part of the building, though attached only by hinges, or it may be held in a place prepared to receive it, by its mere size and weight, as in the present case."

In the same opinion, the same court said, page 365:

"In all these cases the article is applied to the building in such a way as to show an intent to annex it permanently to the freehold; the annexation, whether by means of nails, or screws, or hinges, or mere weight, being still a physical annexation.  The precise manner in which the article is kept in place is not important, except as it may often throw some light upon the question, in a doubtful case, whether a permanent annexation was intended.

"In the present case, the intent to make the annexation permanent is very clearly shown by the preparation of the house for the reception of the furnaces."

In addition to the three tests given above, we think that in the case of mills and mill machinery, that a special rule has been adopted by most of the courts passing upon this question and we believe the true rule in this class of cases is that laid down by the supreme court of Pennsylvania, in the case of *Voorhis v. Freeman,* 2 Watts & Serg. 116, the syllabus of which is as follows:

"The criterion of a fixture in a mansion-house or dwelling is actual and permanent fastening to the freehold, but

this is not the criterion of a fixture in a manufactory or a mill.

"Machinery, which is a constituent part of the manufactory to the purposes of which the building has been adopted, without which it would cease to be such manufactory, is part of the freehold, though it be not actually fastened to it; and this criterion has a place in questions between vendor and vendee, heir and executor, as well as debtor and execution creditor; but not between tenant and landlord, and remainderman. *Ruled,* therefore, that a mortgage and sale of a lot and iron-rolling mill, with the buildings, apparatus, steam engine, boilers and bellows attached to the same, passed the entire set of rolls used in the mill, whether actually in place, or temporarily detached to make room for such as were; and that such rolls could not be seized and sold as chattels, on a *fieri facias* against the mortgagor."

In the case of *Christian v. Dripps,* 28 Pa. St. 271, which was a case where the machinery in question consisted of a planing machine, lathes and vices in a machine shop or car factory, the manner of their annexation was differently testified to by the various witnesses. There was testimony to show that the joist lathe stood on blocks, and that the lathe and blocks were fastened to the floor by screw bolts, and that the countershaft for running the lathe and which was part of it was fastened by bolts to the ceiling. And all other lathes were fastened to the floor by driving staples across the feet into the floor and the countershafts to the ceiling. All the lathes were run by steam power, but one was rigged for foot power, and partly worked with a treadle. One witness said that the lathes were not fastened to the floor in any manner. On this state of facts, the court said:

"But the question was not whether these lathes were bolted and strapped to the floor and ceiling; for if they were

a necessary part of the machinery for carrying on the business of the machine shop, they belonged to the manufactory, whether bolted to the floor or not. That a machine shop for manufacturing railroad cars would be incomplete, if not useless, without lathes, is almost a self-evident proposition."

In the case of *Ege v. Kille*, 84 Pa. St. 340, the court said:

"The criterion of a fixture depends on the business for which the premises are used. A fixture in a manufactory, mill, or colliery may have no adaption to many other kinds of business. Although not attached, yet, if it be designated for the convenience of trade on the premises, and be so used, or subject to be called into use at any time, it becomes a fixture. If the article is indispensible in carrying on the specific business, it becomes a part of the realty. (*Voorhis v. Freeman*, 2 Watts & Serg. 116: *Pyle v. Pennock*, Id 390) This rule, however, does not prevent a tenant who erects fixtures for the benefit of his trade or business from removing them from the demised premises within his terms. The question here is between persons who are hostile claimants to the land. As between them, all the machinery and implements necessarily used in working the mines became a part of the realty. There was therefore no error in the court charging: "Whether fast or loose, all the machinery of an ore-bank which is necessary to constitute it such, and without which it would not be an ore-bank, equipped and ready for use as such, are a part of the freehold, and the recovery of the land by the plaintiffs in the action of ejectment gave to them the ore-banks on it, with all the machinery, whether fast or loose, necessary to constitute them such, equipped and ready for use.' That some machinery was essentially necessary to raise the ore and prepare it for market is very manifest. It was therefore proper to show what machinery was actually used for that purpose, and to submit its necessity and value to the jury. The evidence was rightfully received."

In the case of *Ottumwa Woolen Mill Co. v. Hawley,* 44 Ia. 57, the steam engine, boiler, whistle, pump, and all its attachments and bolts, connecting it directly with the other machinery, fulling mill and its attachments and belts, main shaft and pulleys thereon, and the belts connecting the counter shafting, and all other machinery necessary to make a complete woolen mill as a whole, were held to be real property. The machinery was connected with the motive power, and was fastened to the floor by screws in the feet, the carders, however, being kept in position by their own weight. The spinning jacks were fastened and held in position by cleats nailed to the floor, and by iron rods running up through the floor above. It was argued that this machinery was equally well adapted to any other building; that they were manufactured with a view of being used in any woolen mill in which they might be placed; that they were entire and complete machines in and of themselves, and that the physical attachments were such that they might be readily removed to any other building; and that there was nothing in the character of the machine or mode of annexation denoting that they were intended as permanent annexations to the realty, and because of the above considerations such machinery was personalty. In answering this argument, the court said, page 64:

"It being conceded by all the cases that the engine, boiler, and attachments, being the motive power, are fixtures, and that the stones or burrs of a grist mill, with the attachments, are likewise fixtures, it is not easy to understand why any dividing line should be made at the point where the belting attaches to the other machinery. Is there anything in the whole record of this case tending to show that the machinery in question was intended to be any less permanent than the

engine, shafting or belt? The fair presumption is, that the whole machinery, including that now in question, was placed in the building with the intention that they should remain there as a part of the manufactory until worn out or displaced by others. This assumption is as strong and controlling as to the carding machines, spinning jacks, etc., as it is as to the engine, shafting and belts. Our conclusion is, that all of the machinery which was propelled by the engine was part of the real estate, and passed with the foreclosure and sheriff's deed."

The case of *Hopewell Mills v. Taunton Savings Bank,* 150 Mass, 521, which was a case of machinery placed in a cotton mill, after the date of a real estate mortgage, was brought up for decision on an agreed statement of facts. A description of each machine was given, the character of its annexation, and how it was run. These machines were not especally built for use in this particular mill, and all could equally well have been used for the same purpose in any other cotton mill having the ordinary room to hold and power to operate them. The court said in that case:

"The character of the property as real or personal may be fixed by contract with the owner of the real estate when the article is put in position, but such a contrast cannot affect the rights of a mortgagee, or of an innocent purchaser without notice of it. * * * The building mortgaged was a cotton mill; and the machinery in controversy was all procured for use in manufacturing cotton cloth. Most of it was heavy; and there is much to indicate that, while there were changes in the kind of goods manufactured, the machines were not of a kind intended to be moved from place to place, but to be put in position, and there used with the building, until they should be worn out, or until, for some unforseen cause, the real estate should be changed, and put to different use. Of most of them it is said in the agreed statement that they were fastened to the floor for the purpose of steadying them

when in use; but it is also said that this is not a statement of the only purpose for which they were fastened. They seem to have been attached to the building, and connected with the motive power, with a view to permanence."

The same doctrine is laid down by the Massachusetts supreme court in the cases of *Thompson v. Vinton,* 121 Mass. 139; *Hunt v. Iron Co.* 97 Mass. 279; *Pierce v. George,* 108 Mass. 78; *Bank v. Machine Works,* 127 Mass. 542.

In the appellate court of Illinois, in the case of *Fifield and Morse v. Farmers' National Bank,* 47 Ill. App. 119, it is held:

"The intention of the parties has much to do with the question whether certain attachments to realty are to be regarded as fixtures that will pass with the land, and this intention is manifested by acts."

The facts of the above case are so closely similar to the facts at bar, as to make it almost a remarkable coincidence. On July 1st, 1891, certain citizens of the village of Winonette, entered into a written agreement with one Richard Day, by which they agreed to convey to said Day certain real property in said village and pay him $6,000. Day agreed on his part to erect on said lots a shoe factory building, and to put in the necessary machinery and equip the same for a shoe factory. By way of complying with his part of the contract, Day purchased of Fifield & Morse, machinery for the shoe factory, a list of which is given in the report, pages 119 and 120. The weight of the machinery, it being all that was necessary for the fitting out of a complete shoe factory, varied from twenty pounds to eleven hundred pounds, part of it fastened to the floor, or planks fastened to the floor by leg screws, and also bolted to the shafting overhead. Part of the machines were fastened to benches by wood screws, and bolt-

ed to the shafting—such benches being nailed to the floor.
The machinery was all placed in the building under Day's
direction, and was put in the building for the purpose of
manufacturing shoes, and was all used for that purpose, and
increased the value of the plant. The record showed in that
case, as it did in the case at bar, that this machinery was es-
sential to the plant ,and was especially adapted for manufac-
turing shoes, and necessary for that purpose; and when it was
placed in the building, it was not with the purpose of taking
it out. Fifield & Morse, the venders of the machinery, knew
for what purpose the machines were sold, and that they would
be attached to the factory building in the manner in which
they were. The machinery was sold on 30, 60 and 90 days'
time, with the proviso that the machinery should remain
their property until paid for. Day having failed on the
23rd of November, 1891, gave a trust deed or mortgage to
the lots, describing the lots by number, but without making
any reference in the mortgage to the machinery. On the
24th of November, the Fifield-Morse Company started a re-
pleven suit for the machinery which they had sold. Under
an agreement among all the parties, the property was sold,
and the receiver was ordered to keep out a certain sum to be
distributed as ordered by the court. Under this state of
facts, the court said:

"The sole question for our decision in this case is wheth-
er or not the machinery in question placed in and attached
to the manufacturing building in the manner shown by the
testimony and under all the circumstances became fixtures to
the real estate and passed by the trust deed of Day to appel-
lee. The question is one not entirely free from doubt, and
the authorities, as might be expected, are not altogether in
harmony. In consideration of the case we will first notice
the nature of appellant's contract with Day in regard to the

sale of the machinery. They undertook to retain title in themselves, secret to all the world save to the parties to the contract, and thereby give an appearance of ownership in Day to the machines, when in fact he had none. Contracts of this nature are disapproved by courts and judges and held void as to third parties.

"The supreme court of this state has often passed on the question, so holding them void as to third parties. (*Jennings v. Gage*, 13 Ill. 610; *Brundage v. Camp*, 21 Ill. 330; *Murch v. Wright*, 46 Ill. 488; *Harrey v. R. I. Locomotive Works*, 93 U. S. 664; *Chickering v. Bastress* 130 Ill. 206.) But in addition to this, appellants allowed the machines to be attached to the freehold and used in the building as a part of the plant, and this, too, under a deed to Day that required the machinery not to be removed within five years. We think, under those circumstances, the appellants in equity ought to be held as having waived the secret lien and consented to the machinery being used as a part of the manufacturing plant. If this should not be so, then Day would be placed in an appearance of affluence by which he could procure credit and deceive the public. * * * It will be observed that appellants did not place the machinery in the factory building, but it was done by Day, who undoubtedly placed it there with the intention of its becoming a part of the factory, and this was at least impliedly assented to by appellants.

"The fact, if it be a fact, that appellants claimed these machines before the taking of the real estate mortgage by appellee, can make no difference. Having allowed the machines to be placed in the building, appellants ought not to be allowed to change their attitude when creditors were pressing for security and payment. It is not necessary to consider the question of whether appellants rescinded the contract with Day by tendering to him the check or draft he gave them in payment for the machinery.

"Feeling satisfied that justice has been done in the case we will not attempt to review the authorities cited with a

view to reconcile them. The decree of the court below is therefore affirmed."

In the case of *McRea v. Central National Bank of Troy,* 66 N. Y. 489, the supreme court of that state reviews all of the cases theretofore decided in the state, and comes to the conclusion that where a building is especially adapted for a mill plant and for the purpose of holding the machinery used in the business, and where the machines were fastened to the floor by plates, nails, and cleats, and were attached to the gearing, that it all constituted one entity, and was real property; and the fact that most of the machines were complete in this, could be removed without material injury to them or to the building, and could be put in any other building having strength to support and power to run them, would not change this character.

In the case of *Rogers et al., v. Crow et al.,* 40 Mo. 91, the supreme court of that state said:

"In accordance with this rule, it has been held repeatedly, that the machinery of a manufactory is to be regarded as a part of the realty, whether it is attached to the body of the building or merely connected with the other machinery by running bands or gearing which may be thrown off at pleasure and without injury to the freehold. In general, it may be said that as between vendor and vendee the purchaser is clearly entitled to everything that has been annexed to the freehold with a view to increasing its value or adapting it to the purposes for which it is used."

In the case of *Feeder v. Van Winkle,* 33 Atlantic, 399 the supreme court of New Jersey uses this language:

"The various appliances were actually annexed to the freehold. They were fitted for and applied to the use to which the real estate was appropriated, all being designed for and necessary to the prosecution of a common purpose.

Thus the machinery and land became unified, and incorporated together as a whole. The business had been carried on for 14 years, and, save for business disaster, might, and probably would, have been prosecuted indefinitely. The machinery employed, the mode of its annexation, and manner of its use, in connection with the realty as an entirety, indicated not a temporary, but a permanent accession. The fact that the machines might be removed and utilized elsewhere, will not, under the circumstances of this case serve to sever them in legal contemplation from the freehold."

In this case, the machinery was attached to a mill subsequent to the execution of a mortgage, and in the case of *Lee v. Humschmidt Building and Wood Working Company,* 37 Atl. 769, the syllabus is as follows:

"Machines purchased by a corporation, and adapted to the business which it is organized to carry on, 'a general building and wood-working business' and placed by it in its mill and fastened to the building to a certain extent, and not moved about from place to place in actual use, are fixtures."

So it may be seen from the above authorities, as well as many more that might be cited to the same effect, that if the facts show that this machinery was intended to be used in the mill, and was attached to the mill for the purpose of carrying on a general milling business, and was done by the owner without any intention of removing the same, but with the intention of constituting the same a part and parcel of one entire grist mill, and that the machinery was properly adapted to that purpose, it becomes a fixture to the real estate. Now the question arises, does the evidence reasonably tend to sustain this finding of fact? We have examined the records containing the evidence, and we find that almost all of the witnesses testified that this machinery in question was fastened in some way to the building occupied and used as

a mill.   Some of the witnesses, it is true, say it was only fastened to keep it in place, and to prevent it from being jarred and shaken to pieces by vibrations, but they all admit that the fastening was for the purpose of using the same as mill machinery; and we think from an examination of the entire record, and all of the evidence contained therein, that .there is evidence which clearly tends to support the finding of the trial court that this machinery was attached to the real estate, and became a part thereof as fixtures.   And this being true, under the oft repeated, well understood, and universally followed rule of this court, the finding of the trial court on this question of fact will not be disturbed.

This brings us to the sole remaining question: That if this machinery is a fixture, does it pass with the mortgage of the defendant in error on the real estate, or is it subject to the lien created by the subsequent real estate mortgage of the plaintiff in error, and their conditional bill of sale?   It will be observed from the record that while this conditional bill of sale was executed long prior to the real estate mortgage of the defendant in error, it was not placed on record until long after the debt evidenced by the note to defendant in error, and secured by the mortgage, had been contracted, so that there is nothing in the record by which we can presume that the defendant in error, at the time he took his mortgage, or at any time prior to the commencement of this suit, had knowledge, either actual or constructive, of the existence of this contract.   So the defendant in error would stand in this record as a subsequent mortgagee without notice of any rights saved to the plaintiff in error by its conditional bill of sale.   A strong appeal is made to us by counsel for plaintiff in error to reverse this cause on the ground that

the action of the defendant in error in applying the proceeds
of the sale of this machinery to satisfy his debt to the ex-
clusion of the rights of the plantiff in error is unconscionable,
and not in keeping with honest and fair dealing. Let us
look at the transaction a moment and see if this position is
tenable. The mortgage of defendant in error was a matter
of record at the time this machinery was placed in the mill
by Tait, and an examination of the records would have shown
to plaintiff in error that under and by virtue of the terms of
that mortgage, this machinery, on which they were seeking
to preserve a lien for the purchase money, might reasonably
be expected at some time to become subject to the lien of the
mortgage of Bathgate. With this knowledge, the plaintiff
in error, without any protest, allowed this machinery to be
placed in that mill, nailed or fastened to the real estate, and
used as a part thereof, while on the other hand, any arrange-
ment which the plaintiff in error may have had with Tait
whereby the title was not to pass from them to Tait until the
purchase money was paid, was a secret arrangement, which
was not made known until long subsequent to the time when
the rights of Bathgate attached. He made his mortgage
without any knowledge of any such arrangement, and in his
mortgage, made it a lien, not only upon the real estate and
the mill property, and fixtures then upon the real estate, but
added the additional clause that it was to cover all subse-
quently acquired machinery or fixtures. Now if the position
of the plaintiff in error is unfortunate, they have gone into
that position with their eyes open. There was record evi-
dence that would have warned them of the condition that
did exist, and might reasonably follow from allowing the
machinery to be placed in the mill under this situation and

with the mortgage of Bathgate of record.  The conduct of the plaintiffs in error as shown by this record was that when they sold this machinery in question, they took a conditional bill of sale, by the terms of which they expected to protect their title to the property sold, until such time as the purchase price was fully paid.  Now it seems to us that if this was done for an honest purpose and with the desire to act in accordance with fair dealing to all parties, their proper course would have been to have placed this conditional bill of sale on record as a notice to any persons who might thereafter deal with the vendee of such machinery, of the condition of the title.  But they did not do this, but secretly put the bill of sale in their inside pocket, buttoned up their coat, and said nothing about it, and allowed the public to deal with the vendee of such machinery as though no such condition attached to the same, and as though he was the absolute owner of the same.  Not only this, but in further deception as to the ownership of this property, the plaintiff in error took a second mortgage on the mill property to secure the payment for this machinery.  In fact, at all stages of this proceeding the plaintiff in error seems to have relied upon its mortgage as security for the payment of this debt, as in their first answer they only set up this mortgage, and made no claim of a conditional bill of sale; and it is only when it is made apparent by the report of the receiver that the property had deteriorated in value so that the entire premises, including the machinery claimed by The Great Western Manufacturing Company, was worth only $4000.00, which was considerably less than the claim of Bathgate, that the Great Western Manufacturing Company, plaintiff in error herein, saw that there was not going to be a surplus after

satisfying Bathgate's mortgage sufficient to satisfy their mortgage; they then bring forth and make public this conditional bill of sale, which up to that time, has remained a secret in their own breast. Hence, we think that the decision of the district court was not. only in keeping with honesty, justice and fair dealing, but as a legal proposition is in line with the great weight of authority. Mr. Jones, in his work on Chattel Mortgages, [3rd ed.] vol 1., page 338, sec. 436, says:

"Fixtures attached to the realty after the execution of a mortgage of it, become a part of the mortgage security, if they are attached for permanent improvement of the estate, and not for a temporary purpose."

In the case of *Winslow v. Insurance Company,* 4 Metcalf 306, a mortgage was given by one Pond, on the 25th day of February, 1836, covering a lot and a block. The building was constructed for a machine shop, and the principal business done in it was the manufacture of steam engines and boilers, and other heavy iron work. There was a steam engine therein which carried the whole machinery in the several stories of the building by means of connecting bands, or otherwise. The frame of the engine was placed upon a wooden block, which stood upon a stone on the ground in the basement, and the engine itself stood upon two columns of iron, which were connected by bolts with the timbers of the floor above. The blowing cylinder was in a frame of two wooden columns that were fastened by spikes to the same floor timbers; and the pipes from the cylinder passed under ground. The trip hammer rested on a heavy timber placed on a stone, and was secured by its own weight. The boilers were set in brick work, and were connected with the steam engine by a pipe bolted to the engine and to the boilers, and

the whole power of the engine was exerted by means of this pipe. The brick work was connected with the building only by resting on the ground, and on a small flue. The said steam engine, boilers, cylinder, and trip hammer, and also many of the tools, etc., which are enumerated in the plaintiff's writ and mortgage, were made and placed in said building after the execution of the mortgage.

Under this state of facts the court said:

"The court are of opinion that the steam engine and boilers, and all the engines and frames adapted to be moved and used by the steam engine, by means of connecting wheels, bands or other gearing, as between mortgagor and mortgagee, are fixtures, or in the nature of fixtures, and constitute a part of the realty; and that as all these fixtures were annexed to and made a part of the realty by the mortgagor, they are part of the mortgaged premises, and passed by the first mortgage to the defendants.  *   *   *   *

"Supposing the point to be clear, on the one side, as between heir and executor, and on the other, as between tenant and landlord, how does it stand as between mortgagor and mortgagee?  *   *   *   *

"The question is, what is the reasonable and legal construction of a deed, granting an estate in mortgage, in the usual terms, where there is no stipulation on the subject? Such a deed must of course include all additions which become *de facto* part of the realty, and which are not in their nature equivocal; because a title to the whole, includes every part. In regard to articles doubtful in their nature, we have already stated as our opinion, that if added by the mortgagor, it is to be considered as done by way of permanent improvement, for the general benefit of the estate, and not for its temporary enjoyment. (*Hunt v. Hunt,* 14 Pick. 386.) One of the objects, and indeed one of the most usual purposes of mortgaging real estate, is to enable the owner to raise money

to be expended on its improvement.  If such improvements consist in actual fixtures, not doubtful in their nature, they go of course to the benefit and security of the mortgagee, by increasing the value of the pledge.  The expectation of such improvement and such increased value often enters into the consideration of the parties, in estimating the value of the property to be bound, and its sufficiency as security for the money advanced.  And we think the same rule must apply to those articles which in their own nature are doubtful, whether actual fixtures, or not, on the ground of the presumed intention of the parties.  A presumption arises from the relation in which they stand, that such improvements are intended to be permanent and not temporary,, and that the freehold and the improvements intended to be made upon it are not to be severed, but to constitute one entire security. * * *  The latter, therefore, may be presumed to have intended to annex the improvements to the freehold and make them permanent fixtures; whilst the former must be presumed, from his obvious interest, to erect the improvements for his own temporary accommodation during his term, intending to remove them before its expiration.  *  *  *  *

"As to what shall be deemed fixtures and part of the realty, when the question does not arise as between landlord and tenant, or tenant for life and remainderman, in regard to improvements made by the tenant, it is difficult to lay down any general rule, which shall constitute a criterion. * * *  The difficulty is somewhat increased, when the question arises in respect to a mill or manufactory, where the parts are often so arranged and adapted, so ingeniously combined, as to be occasionally connected or disengaged, as the objects to be accomplished may require.  In general terms, we think it may be said, that when a building is erected as a mill, and the water works, or steam works, which are relied upon to move the mill, are erected at the same time, and the works to be driven by it are essential parts of the mill, adapted to be used in it and with it though not at

the time of the conveyance, attachment or mortgage, attached to the mill, are yet parts of it, and pass with it by a conveyance, mortgage or attachment.

"In the present case, we are of opinion, upon the evidence submitted to the court, that the engines and boilers, and the machines for working iron, upon which they operated, considering the manner in which they were fitted and adapted to the mill, were fixtures, and part of the realty, and were of course covered by a mortgage of the real estate."

This court cites in support of this doctrine, *Powell v. Monson & Brimfield Manufacturing Co.* 3 Mason, 466; *Farrar v. Stackpole,* 6 Greenl. 154; *Gray v. Holdship,* 17 S. & R. 415; *Voorhis v. Freeman,* 2 Watts & Serg. 116.

In *Gardner v. Finley,* 19 Barb. 317, the court say:

"There is no relaxation, as between a mortgagor who has erected fixtures on the land, subsequent to the mortgage, and the mortgagee, of the general rule of the common law which prevails between vendor and vendee, that whatever is fixed to the freehold thereby becomes a part of it.

"Therefore, where a mortgagor subsequent to the execution of the mortgage, puts machinery and other fixtures into a mill upon the mortgaged premises, the purchaser of the premises, at a foreclosure sale, will acquire title to the fixtures as being a part of the real estate."

In *Rice v. Dewey,* 54 Barb. 457, the syllabus is as follows:

"When lands sold and conveyed by a mortgagor are charged with the mortgage debt, improvements that constitute a part of the realty, irrespective of the question by whom made, are equally subject to the lien of the mortgage as the land upon which they are made."

In this case, counsel for the defendants claimed that the rule was otherwise where the improvements were made by third parties, or under an arrangement that the same was not

to become a part of the realty, and the court in answer to this contention, on page 472, say:

"No such rule has ever been applied between mortgagees and purchasers from the mortgagors, in this state. The reverse is the law. I regret that in this case the operation of the rule may be somewhat harsh upon some of the plaintiffs; but the court has no more power to change or modify the established rules in equity than in cases of legal cognizance. Improvements that constitute a part of the realty, irrespective of the question by whom made, are equally subject to the lien of a mortgage as the land upon which they are made."

In *McFadden v. Allen*, 32 N. E. 21, the supreme court of New York, say:

"In determining as between mortgagor and mortgagee, whether articles are, or not fixtures, the same rules prevail which are applicable to cases arising between grantors and grantees. And as between mortgagor and mortgagee, the same rules are applicable to articles placed on the mortgaged premises by the mortgagor after the execution of the mortgage."

In the case of *Roberts v. The Dauphin Deposite Bank*, 19 Pa. St. 71, the third paragraph of the syllabus is as follows:

"Though the engine and boilers were put up after the mortgage to the plaintiff was given, they constituted a part of the mortgage security, and they were not liable to removal by the mortgagor or her assigns, if such removal was injurious to the mortgagee, who has a right to benefit from any appreciation of the mortgaged premises arising from any cause."

And in the body of the opinion, the same court, at page 76, said:

"It is insisted, however, that because the engine, etc., were put up after the giving of the mortgage, therefore they

constituted no part of the mortgage security, and might be removed without doing any wrong to the mortgagee. But this is not so. As the mortgagee may suffer by the depreciation of the property, arising from fluctuations in value, from accident, and from neglect, so he may be benefited by its appreciation, whether the same arises from the proper cultivation and improvment of the property or from any other cause. No other rule could be at all practical."

The supreme court of Illinois, in the case of *Wood et al. v. Whelen,* 93 Ill. 155, in paragraph 10 of the syllabus, used the following language:

"Additions of a permanent character, by way of improvements, on mortgaged premises, made by the owner or mortgagor, are regarded as a part of the mortgaged estate, and may be sold with it. If the owner of the land, during the existence of the mortgage, shall affix any property to it by way of additions or otherwise, such property will become a fixture, in the general sense of that term, and such additions will pass with the estate on foreclosure."

The same court, in paragraph 11 of the syllabus, used the following language:

"Here, the Elgin Gas Company made a mortgage upon its real estate, 'together with the gas works thereon, with all the appurtenances thereto belonging and now situated and being thereon together, all machinery, tools, implements, materials, fixtures in and about the same, and in any wise appertaining; and also the gas mains, pipes and service pipes connected with said gas works and now laid under ground in the said city, and all the gas meters now on hand and in use in connection with said pipes; together with the office, office fixtures and furniture now in the said city and used by the said company.' It was held the lien of the mortgage was not necessarily restricted to the property in the condition it was at the time the mortgage was executed, but any enlargement of the original works, or an extension of mains in streets and

under land not owned by the company, upon license granted for that purpose, and all additional machinery attached to and supplied for the use of the works, would be regarded as but additions to and a part of the original mortgaged property, and would pass with the estate under a sale upon foreclosure."

In the case of *Bank of Louisville v. Baumeister,* 7 S. W. 173, the supreme court of Kentucky say:

"The rule by which to determine whether the warehouse is to be regarded as embraced by the mortgage of Olds is 'that fixtures attached to. the realty, after the execution of a mortgage of it, become a part of the mortgage security, if they are attached for the permanent improvement of the estate, and not for a temporary purpose; or if they are such as are regarded as permanent in their nature, or if they are so fastened or attached to the realty as that the removal of them would be an injury to it.' Although Spalding, at the time he commenced the erection of the warehouse, was not the owner of the lot, nor had in fact openly made his election to purchase it, yet, considering the character and cost of the building, the option to purchase the lot which he had secured by his contract with Mrs. Bullitt, and the special mention of the warehouse in the mortgage to Olds, it is evident it was intended by him to be attached as a permanent improvement of the estate which he subsequently purchased; and as the liability of Olds was incurred to enable him to erect the building, and upon the faith that it, as part of the realty would constitute a security against loss, we think it was properly adjudged subject to his mortgage."

The reasoning of this case is of peculiar force in the case at bar, as there is a strong similarity in the two cases in principle. It is apparent from the record in the case at bar that it was well understood by both mortgagor and mortgagee, at the time of making the Bathgate mortgage, not only that Tait, the mortgagor was to put in new machinery, but

that such new machinery was absolutely essential and necessary to the successful working of the mill; that as testified to by the son, James Tait, Jr., "It would not have been a mill if new machinery had not been put in." In other words, Thomas Bathgate would have had no mortgage upon a mill, if this additonal machinery, the purchase of which was at the time of giving the mortgage contemplated, had not been put in, and upon the strength of which the mortgage and loan was made and executed.

In the case of *Dutro v. Kennedy*, 22 Pac. 763, the supreme court of Montana say, in the syllabus;

"Where in an action to forclose a mortgage which has been destroyed, no issue is raised as to the right of the mortgagee to sell fixtures which were attached to the realty after the execution of the mortgage, and the decree is silent as to that question, the right must be governed by the general rule that the mortgagee may sell such fixtures.

"If the mortgagor endeavors to remove the fixtures on the mortgaged land, he may be enjoined, or the mortgagee may sue for damages, or bring an action of claim and delivery, after he has purchased the property at sheriff's sale."

The case of *Cooper v. Harvey, et al.*, 16 N. Y. Supp. 660 was one where the plaintiff conveyed a certain mill property to the defendant Harvey, and others, and a mortgage was given back by the defendants for the purchase price. At the same time, a bill of sale for the machinery in the mill was given by Cooper to the purchaser, and a chattel mortgage given back for the sale at the time of the conveyance of the real estate. Certain machinery, it appears, was added to the mill after the giving of the mortgage by the purchaser. A question arose in the case as to what property passed under the mortgage. After laying down the rule that fixtures made

by the mortgagor after the execution of a mortgage upon lands conveyed by it became part of the mortgaged premises, the effect of bill of sale and chattel mortgage upon this general rule was discussed, and the court said:·

"The remaining question raised on this appeal is as to the ruling and decision of the referee upon the question as to what passed under the mortgage. Upon this question, the defendants insist that the machinery used in this mill was personal property and did not pass to the mortgagee under the real estate mortgage. It is a familiar principle that the same rule obtains between mortgagor and mortgagee of real estate as exists between grantor and grantee. Ordinarily the character of property, whether real or personal, is determined by the application of these tests: (1) Actual annexation, which must be of a permanent character, except in case of those articles which are not themselves annexed, but are deemed to be freehold from their use and character; (2) adaptability to the use of the freehold; (3) the intention of the parties at the time of making the annexation. In this case, the machinery that was in the mill at the time of the sale, as between the grantor and grantee, constituted one of the chief features of the property for manufacturing purposes, for which it had been used, and for which manifestly it was to be used by the purchasers. For the grantor to have removed it after the purchase, on the ground that it was personal property, would practically have destroyed all that was valuable in contemplation of the purchasers, for the purpose of manufacturing knit goods. Such machinery was therefore deemed to be part of the realty from its use and character. It must also be deemed to be a part of the realty from its adaptibility to the use of the freehold. As to the machinery put up in the mill after the purchase by the defendant, and after the execution of the mortgage, its character must be determined by the intention of the parties. That intention, we think, is clearly indicated by the manner

in which the machinery was placed in the buildings, and attached to the same by the owner of the fee of the mortgaged premises after the mortgage was given, and while it remained in force against the premises. Permanent erections and fixtures, made by a mortgagor after the execution of the mortgage, upon lands conveyed by it, become part of the mortgaged premises. (*Snedeker v. Warring,* 12 N. Y. 170.) And this case also holds that the same rule exists between mortgagors and mortgagees as would prevail between grantor and grantee. Tested, therefore, by the rule that would prevail in case of a sale of these premises, there seems little doubt that this added machinery. boiler, and engine became a part of the real estate by being placed upon and attached to it, as shown in this case, unless the legal effect of their annexation was changed by the execution of the chattel mortgage, and the statement of Cooper as found by the referee, that the real estate mortgage did not cover the boiler, engine, and machinery, and a bill of sale and chattel mortgage was executed by the parties respectively conveying the same.

"It seems to be conceded by the defendants that, but for the bill of sale and chattel mortgage, this property would have passed by the deed and real estate mortgage, so far, at least, as it was in the mill at the time of the sale; but as to that placed therein after the execution of the deed and mortgage, a different rule is claimed to exist; but we have shown, upon the authority above cited, that fixtures which would pass by the mortgage, if on the premises before its execution, would, as between the mortgagee and mortgagor, in like manner pass, if placed on the premises after the execution of the mortgage. (*Snedeker v. Warring, supra.*) What, then, was the effect of the bill of sale and chattel mortgage as to changing the character of this machinery from real to personal property? In *Voorhees v. McGinnis,* 48 N. Y. 278, the owner of a saw and grist mill erected a substantial building and placed therein a steam engine, boiler, shafting, and gearing, which were constructed with especial reference to the

place in which they were to be used, but without any intent
on the part of the person making the improvement either of
making them a part of the freehold, or of removing them in
the future, and gave a real estate mortgage upon the proper-
·ty.    Subsequently the boiler and machinery were removed
for the purpose of having them replaced by a new boiler and
new machinery, and while the new boiler and machinery
were at the shop for repair, the owner of the mill gave a
chattel mortgage upon them; and after the repairs were com-
pleted, and the mill was in running order, he gave another
mortgage upon them and ·other machinery.    After the re-
pairs, and before the last chattel mortgage, he gave a real es-
tate mortgage on the premises, and the plaintiff acquired
title under the foreclosure and sale on the two real estate
mortgages.

"The holders of the chattel mortgages removed the ma-
chinery covered by these mortgages, *Held,* that although
the mortgager had no special intent upon the subject, the
facts disclosed that the boiler, engine, shafting, and gearing
were permanent accessions to the freehold.    Applying the
principle of that case to the facts in this, there seems to be
a much stronger reason for holding that this machinery and
fixtures covered by the chattel mortgage were a part of the
realty, and passed under the real estate mortgage.    In this
·case, the right of no third party is involved.    The object
of the parties manifestly was to confer upon the purchaser
a valid title to all of this property, whether classed as real
or personal, and a like object on the part of the mortgagor
and mortgagee to create a valid security for the entire debt
upon all of the property sold.    Their misapprehension as to
the legal effect of the annexation of and adaptability to the
uses of this mill of the machinery did not change the law or
legal effect of the physical annexation of the same to this
real estate.    It follows, therefore that the real estate mort-
gage attached to all the real estate and fixtures of which the
property covered by the chattel mortgage was a part.    On the

whole case, we see no error for which this judgment should be reversed.   Judgment affirmed, with costs."

Mr. Cobbey, in his work on Chattel Mortgages, sec. 206, says:

"Where the personal property is so incorporated with the realty as to become a part of it, it will not be considered as personal property afterwards, to the prejudice of third parties. Thus as between a mortgagee of the machinery of a cotton mill, permanently attached to the realty, and used with it, and a subsequent mortgagee of the realty, the title of the later will prevail."

Also, in section 207, of the same work, we find the following language:

"Where machinery is put into a factory, and attached thereto, with the intention of using it permanently as part of the same, and it is adapted to such use, it becomes a fixture and a part of the homestead, and is not subject to mortgage as a chattel."

And in the same section, we find this language:

"A mortgage on a woolen mill passes, as a part of the realty, the engine furnishing the power, the shafting, belts, carders, spining jacks, looms and other machinery, although only attached to the building by cleats, etc. to keep them in place."

In section 212, the author says:

"The parties concerned may, by agreement in due form, give to fixtures the legal character of realty or personalty at their option; and the law will respecct and enforce their understanding whenever the rights of third parties will not be prejudiced."

Also, in section 216, we find this language:

"Machinery placed in a calico factory, subject to a mortgage, by the mortgagor, intended for use in the business, and to permanently increase the value of the factory, will pass

by a mortgage of the realty, although not so attached to the building as to injure the building by removal; and it cannot be taken away without the mortgagee's consent."

For the reasons above stated, and from the authorities cited herein, we have arrived at the conclusion that the decision of the district court was right, and the same is hereby affirmed, at the costs of the plaintiff in error.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.