## COOPER *v.* HARVEY *et al.*

(*Supreme Court, General Term, Third Department.* .November 30, 1891.)

1. **VENDOR AND VENDEE—FRAUD—BROKERS.**
   The fact that a person through whose agency a sale of real estate was consummated acted in the matter for both parties, in the absence of actual fraud, is not *per se* such fraud as will vitiate the contract of the parties.

2. **SAME.**
   An agreement between a land-owner and an agent that a large compensation shall be paid to the latter for procuring a purchaser, although kept from the knowledge of such purchaser, does not amount to a fraud upon him.

3. **SAME.**
   Overvaluation of real estate by a vendor, and one secretly acting as his agent, is not a fraud upon a purchaser, who was afforded opportunity to and did personally examine the property.

4. **FIXTURES—RIGHTS OF MORTGAGOR AND MORTGAGEE.**
   Mill property containing machinery adapted to its use was conveyed, and a mortgage given for the purchase price. At the same time the vendor gave a bill of sale of the machinery, and took back a chattel mortgage thereon. Subsequently the purchaser added machinery of a permanent character. *Held*, that the machinery passed as realty by the conveyance, and was included in the mortgage of the real estate, and the bill of sale and chattel mortgage did not change its character to personalty, and that the permanent machinery thereafter added also became subject to the mortgage.

Appeal from judgment on report of referee.

Action by George B. Cooper against Watson P. Harvey, Carrie Harvey, and others to foreclose a mortgage. Pending the action plaintiff died, and the action was continued by Alfred Cooper and another as ancillary administrators. Judgment for plaintiff. Defendants appeal. Affirmed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*E. F. Bullard*, for appellants. *Cady & Hoysradt*, (*J. Rider Cady*, of counsel,) for respondent.

MAYHAM, J. On October 25, 1879, George B. Cooper conveyed the mortgaged premises in question in this action to Watson P. Harvey and Martha Bailey, wife of Hiram F. Bailey, for the consideration expressed in the deed of $16,500; and, for the purpose of securing the payment of $14,500 of the purchase price of the premises, the grantees and Hiram F. Bailey executed and delivered to the grantor their bonds in the penal sum of $29,000, conditioned for the payment of such purchase money, and, as collateral to such bond, the grantees executed and delivered to the grantor the mortgage to foreclose which this action is prosecuted. A bill of sale

of the machinery in the mill was given by Cooper to the purchaser, and a chattel mortgage given back for the sale, at the time of the conveyance of the real estate.   The complaint is in the ordinary form in an action of foreclosure.   The answer of the defendant Watson P. Harvey and Carrie Harvey, without putting in issue the execution of the mortgage, seeks to defend the action on the ground of fraud, alleged to have been practiced by the plaintiff's intestate in the conveyance, and in the procuring of the mortgage.   The referee finds, and the case shows, that at the time of the commencement of the negotiation for the sale of these premises by the agent of Cooper, the grantor, he offered to pay Hiram F. Bailey $2,000 if he would furnish a purchaser for the property at $19,000, and that it was subsequently changed so that Bailey was to receive that amount if he furnished a purchaser for the same at $16,000, and that thereafter Bailey opened negotiations with Watson P. Harvey for the sale of the premises to him, and such negotiations finally resulted in the sale to Harvey and Mrs. Bailey, wife of Hiram F. Bailey, without any knowledge on the part of the purchasers that Hiram F. was to receive for negotiating such sale the sum of $2,000 from the grantor.   The appellants now insist that in that sale Hiram F. Bailey acted as the agent of Harvey and his wife to negotiate the purchase, and also as the hired agent or broker of the grantor to effect a sale; and that he, in effect, was serving two masters in the same transaction, whose interests were adverse to each other; and that such participation in this sale constituted a fraud as against the grantees, which taints or vitiates this mortgage.   If this case clearly disclosed that Hiram F. Bailey acted as the agent of Watson P. Harvey and Martha Bailey in the purchase of this property, while at the same time he was the paid broker or agent of Alfred Cooper, the grantor, and vendor of this property, and that Cooper was cognizant of the existence of that relation between Bailey and the grantees, it would furnish a very strong circumstance tending to establish the presumption of fraud.   Story, Ag. § 210; *Insurance Co.* v. *Minch,* 53 N. Y. 145.   But while the existence of such relations between the parties and one assuming to act as the agent for both parties would furnish a strong presumption of fraud, I find no case holding that it, standing alone, unaccompanied by any proof of fraud in fact, to the injury of the party, would be *per se* such a fraud as to vitiate the contract of the parties when the same has been entered upon by them.   In *Ranney* v. *Warren,* 17 Hun, 113, the court held that fraud, accompanied with damages, gives a right of action. But fraud without damage does not.   But we find no evidence in this case that Hiram F. Bailey was in fact the agent of Watson P. Harvey and Martha Bailey, and the referee expressly refuses to find the existence of that relation between them; and, while the circumstances are not free from doubt on that subject, we do not think them clear enough to authorize us to interfere with that finding.   Hiram F. Bailey was therefore the real-estate broker employed by Henderson, the agent of Cooper, to sell these premises, and as such was in a position to legally contract with Cooper for his compensation in finding a. purchaser.   He accompanied Harvey, and Harvey's father, an experienced person in mills, fixtures, and machinery of this kind, on a tour of inspection of this property, and these parties made a full examination of the same, and there is no evidence of any concealment or misrepresentation as to the character, condition, or quality of any of the property; but the purchasers were not informed of the compensation which Bailey was to receive for his services in procuring a purchaser.   In the absence of evidence of conspiracy or fraud, Cooper and Bailey could agree upon the compensation to be paid for finding a purchaser, and that agreement in itself would not be a fraud upon the purchasers, nor would the fact that its terms were kept secret, as to them give them any just ground of the complaint.   Such agreements are of daily occurrence, and we are not aware that they have ever, in the absence of fraud or conspiracy, been held to violate any just rights of the purchaser.

But it is insisted that Cooper and his agents overestimated the value of this property, and that such overestimate was a fraud upon the purchasers. We do not think that this contention is sound. The value of this property was, at most, only a matter of opinion. The purchaser, as well as the vendor, could form an opinion as to its value. In forming that opinion, each party had a right to fix his own estimate of value. If, in the opinion of the grantees, the grantor's estimate was too high, they should not have accepted his offer. The rule upon this subject is correctly stated by MILLER, J., in *Chrysler* v. *Canaday*, 90 N. Y. 279, as follows: "The rule is well settled that a naked assertion of the value of property offered for sale, even although untrue in itself, and known to be such by him, unless there is want of knowledge by the vendee, and the sale is made in entire reliance upon the representations made, or unless some artifice is employed to prevent inquiry, or the obtaining of knowledge by the vendee, will not render the vendor responsible to the vendee for damages sustained by him." There can be no well-founded pretense in this case that the vendees purchased with entire reliance upon the declaration of the vendor as to the value of this property. The vendee, Harvey, made several personal examinations of the premises, and had the assistance of his father, who was acquainted with this kind of property, and also the assistance and judgment of the expert, Walter McFarlan. Nor was there any artifice practiced by the grantor to divert the attention of the grantees from a full and careful examination of the property. The referee finds that the negotiations for the purchase of the property, and the subsequent sale and mortgage thereof, were conducted without fraud or misrepresentation on the part of any of the parties thereto. In *Ellis* v. *Andrews*, 56 N. Y. 83, GROVER, J., in discussing the liability of the grantor for an assertion as to the value of the property sold, uses this language: "Upon the question of value, the purchaser must rely upon his own judgment, and it is his folly to rely upon the representations of the vendor in that respect; but, in regard to any extrinsic fact affecting the quality or value of the subject of the contract, he may rely upon the assurance of the vendor." To the same effect is the case of *Van Epps* v. *Harrison*, 5 Hill, 63; also *Hubbell* v. *Meigs*, 50 N. Y. 480. We do not think that within the authorities, and the principle governing this class of actions, the statement made by Cooper or his agent, in reference to the value of this property, can be regarded as fraudulent, or that the deed or mortgage is in any way affected by them. We have examined the rulings of the referee in reference to the receipt and rejection of evidence to which exceptions were taken by the defendants, and find no error in such rulings for which the judgment entered upon his report should be reversed.

The remaining question raised on this appeal is as to the ruling and decision of the referee upon the question as to what passed under the mortgage. Upon this question the defendants insist that the machinery used in this mill was personal property, and did not pass to the mortgagee under the real-estate mortgage. It is a familiar principle that the same rule obtains between mortgagor and mortgagee of real estate as exists between grantor and grantee. Ordinarily the character of property, whether real or personal, is determined by the application of these tests: (1) Actual annexation, which must be of a permanent character, except in case of those articles which are not themselves annexed, but are deemed to be freehold from their use and character; (2) adaptability to the use of the freehold; (3) the intention of the parties at the time of making the annexation. In this case the machinery that was in the mill at the time of the sale, as between the grantor and grantee, constituted one of the chief features of the property for manufacturing purposes, for which it had been used, and for which manifestly it was to be used by the purchasers. For the grantor to have removed it after the purchase, on the ground that it was personal property, would practically have destroyed all that was valuable, in contemplation of the purchasers, for the purpose of manu-

facturing knit goods. Such machinery was therefore deemed to be part of the realty from its use and character. It must also be deemed a part of the realty from its adaptability to the use of the freehold. As to the machinery put in the mill after the purchase by the defendant, and after the execution of the mortgage, its character must be determined by the intention of the parties. That intention, we think, is clearly indicated by the manner in which the machinery was placed in the buildings, and attached to the same by the owner of the fee of the mortgaged premises after the mortgage was given, and while it remained in force against the premises. Permanent erections and fixtures, made by a mortgagor after the execution of the mortgage, upon lands conveyed by it, become part of the mortgaged premises. *Snedeker* v. *Warring*, 12 N. Y. 170. And this case also holds that the same rule exists between mortgagors and mortgagees as would prevail between grantor and grantee. Tested, therefore, by the rule that would prevail in case of a sale of these premises, there seems little doubt that this added machinery, boiler, and engine became a part of the real estate by being placed upon and attached to it, as shown in this case, unless the legal effect of their annexation was changed by the execution of the chattel mortgage, and the statement of Cooper, as found by the referee, that the real-estate mortgage did not cover the boiler, engine, and machinery, and a bill of sale and chattel mortgage were executed by the parties respectively conveying the same.

It seems to be conceded by the defendants that, but for the bill of sale and chattel mortgage, this property would have passed by the deed and real-estate mortgage, so far, at least, as it was in the mill at the time of the sale; but as to that placed therein, after the execution of the deed and mortgage, a different rule is claimed to exist; but we have shown, upon the authority above cited, that fixtures which would pass by the mortgage if on the premises before its execution, would, as between the mortgagee and mortgagor, in like manner pass, if placed on the premises after the execution of the mortgage. *Snedeker* v. *Warring*, *supra*. What, then, was the effect of the bill of sale and chattel mortgage as to changing the character of this machinery from real to personal property? In *Voorhees* v. *McGinnis*, 48 N. Y. 278, the owner of a saw and grist mill erected a substantial building, and placed therein a steam-engine, boiler, shafting, and gearing, which were constructed with especial reference to the place in which they were to be used, but without any intent on the part of the person making the improvement either of making them a part of the freehold, or of removing them in the future, and gave a real-estate mortgage upon the property. Subsequently the boiler and machinery were removed for the purpose of having them replaced by a new boiler and new machinery, and, while the new boiler and machinery were at the shop for repair, the owner of the mill gave a chattel mortgage upon them; and after the repairs were completed, and the mill was in running order, he gave another mortgage upon them and other machinery. After the repairs, and before the last chattel mortgage, he gave a real-estate mortgage on the premises, and the plaintiff acquired title under the foreclosure and sale on the two real-estate mortgages. The holders of the chattel mortgages removed the machinery covered by these mortgages. Held that, although the mortgagor had no special intent upon the subject, the facts disclosed that the boiler, engine, shafting, and gearing were permanent accessions to the freehold. Applying the principle of that case to the facts in this, there seems to be a much stronger reason for holding that this machinery and fixtures covered by the chattel mortgage were a part of the realty, and passed under the real-estate mortgage. In this case the right of no third party is involved. The object of the parties manifestly was to confer upon the purchaser a valid title to all of this property, whether classed as real or personal, and a like object on the part of the mortgagor and mortgagee to create a valid security for the entire debt upon all of the property sold. Their misapprehension as to the legal

effect of the annexation of and adaptability to the uses of this mill of the machinery did not change the law or legal effect of the physical annexation of the same to this real estate. It follows, therefore, that the real-estate mortgage attached to all the real estate and fixtures of which the property covered by the chattel mortgage was a part. On the whole case, we see no error for which this judgment should be reversed. Judgment affirmed, with costs.

All concur.