## MORTGAGE BOND CO. et al. v. STEPHENS.

No. 27711.   Oct. 26, 1937.

Rehearing Denied Dec. 21, 1937.

building is of steel and concrete construction and contains 28 suites of rooms or individual apartments. The defendant, Mortgage Bond Company, built and furnished the building and mortgaged it to the plaintiff by real estate mortgage. Thereafter the plaintiff foreclosed upon the property and after judgment in his favor and pending appeal therefrom, he caused execution to b- issued on said judgment and the premises were sold at sheriff's sale. He was the successful bidder at the sale and after the confirmation of the sale and the issuance of a writ of assistance, the Mortgage Bond Company and W. L. Reed, who was its president and its manager of the premises involved, being still in possession of said premises, began threatening to remove certain alleged equipment from the building. Thereupon, the plaintiff commenced the present action against said defendants, W. L. Reed and the Mortgage Bond Company, for injunctive relief from their threatened removal of said equipment, which consists of certain folding beds and some kitchen furnishings, which will frequently be referred to herein as "kitchen units." Each of these units was comprised of a gas cooking range and a kitchen cabinet containing an electric refrigerator and is sometimes called an efficiency apartment or apartment hotel unit. Plaintiff's petition alleged that these articles were all installed in and attached to said building as a part of the premises.

After a temporary restraining order had been entered by the trial court, a hearing was had upon the defendants' motion to dissolve said order.

At the hearing, the uncontroverted testimony concerning the installation of the equipment in the various apartments was as follows: That the refrigerators were a part of the kitchen cabinets; that they were cooled by the circulation of a refrigerant through the coils of a cooling unit in each refrigerator; that this refrigerant was circulated under pressure, to each refrigerator unit, from motors in the basement of the building by means of pipes laid in the walls of the building when it was constructed; that said motors were bolted to wooden platforms lying on the floor of the basement of the building; that the coils in each refrigerator were connected to said wall pipes by pipe fittings; that the refrigeration system, as a whole, is what is termed a central

Joe Chambers and Jack Paden, for plaintiffs in error.

Fred L. Hoyt, for defendant in error.

DAVISON, J. The suject matter of this action is certain equipment in the Altamont Apartments of Tulsa, Okla. The apartment

operated plant; that these kitchen cabinets stand flat on the floor of the kitchen with the refrigerated part under the drain board at the left of the sink; that the kitchen cabinets were purchased from a St. Louis concern and the refrigerator units were purchased from the Watt Plumbing Company, which took a chattel mortgage upon them; that the units were installed about 30 days after the execution of plaintiff's real estate mortgage; that the other items of the kitchen units and the rest of the furnishings of the apartments were mortgaged to three women who financed their purchase and that these mortgages have been foreclosed; that the kitchen cabinets are manufactured as a unit to be fitted together after they are moved into the apartment; that the gas ranges rest on the cabinets at the right of the kitchen sinks and are connected with the gas outlets in the wall by ordinary gas pipe unions and are designed to occupy a minimum amount of space in a small kitchen; that the folding beds are of the type called in-a-door or Murphy beds and they swing on pivots which are a part of a bracket screwed into the wall of a large closet into which it folds; that the beds can be lifted from the brackets and set up in various rooms of the apartments.

After the hearing, the trial court rendered judgment for the plaintiff granting a permanent injunction against the removal of the items of equipment involved, upon its finding the same were fixtures and a part of the realty, title to which was in the plaintiff. The defendants have appealed to this court from said judgment.

The principal question of law involved in this case is whether or not the kitchen units and in-a-door beds became fixtures of the efficiency apartments involved herein upon their installation therein. It is impliedly admitted, and correctly so, that if they are a part of the realty, they are a part of the plaintiff's real estate mortgage security and, as such, title thereto passed to plaintiff by reason of the foreclosure of said mortgage and his purchase of the premises at foreclosure sale.

In Quality Milk Products Co. v. Endowment Loan & Mortgage Co., 175 Okla. 94, 51 P. (2d) 550, we said:

"The criterion adopted by many courts, and by this court, for determining whether property ordinarily regarded as personal property becomes a part of the realty, is the united application of the following requisites; First, by determining whether the chattel has been actually annexed to the realty or something appurtenant to the realty; second, whether the chattel is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated; third, the intention of the party making the annexation to make the chattel a permanent accession to the freehold. The rule is so stated in the syllabus in Seminole Supply Co. v. Seminole Refining Co., 173 Okla. 32, 45 P. (2d) 1084. See, also, Elerick v. Reed, 113 Okla. 195, 240 P. 1045, 44 A. L. R. 474; Great Western Mfg. Co. v. Bathgate, 15 Okla. 87, 79 P. 903. See, also, Jones on Mortgages (8th Ed.) vol. 1, p. 686, pars. 531, and 532. In that text, it is also said that: 'In the more recent cases the intention with which a chattel is attached to the realty has become more and more the decisive test whether or not the chattel has become a part of the realty. Such intention may be inferred from the circumstances.'"

Great difficulty and confusion can be encountered in attempting to apply the first of the above tests without a thorough understanding of it. The defendant seems to proceed upon a theory that must be based upon a false conception of the word "annexed," one which would confine its scope to that which is permanently attached. The first point in his argument seems to be that, since the chattels in question are not actually attached to the apartment building by the materials mentioned in section 11724, O. S. 1931, viz., cement, plaster, nails, bolts or screws, they could not be deemed fixtures. Because the word "as" appears immediately preceding the words "by means of cement, plaster, nails, bolts or screws" in the statute, on first blush, it can readily be surmised that this part of the statute is only exemplary of the preceding phrase, and that the true intent and meaning of this statute might be more clearly demonstrated by an insertion of the words "for instance" between the words "as" and "by" so as to make said statute read as follows, to wit:

"A thing is deemed to be affixed to land when it is * * * permanently attached to what is thus permanent, as (for instance) by means of cement, plaster, nails, bolts or screws."

A glance at the different ways that the first general test of a fixture has been worded and applied confirms our belief that such an interpretation of the statute has a

firmer basis than mere surmise, and that the different means mentioned in the statute by which personalty may become affixed to realty are not exclusive, but are merely examples of permanent attachment. The annexation test is usually stated as follows: "Annexation to the realty either actual or **constructive.**" 62 A. L. R. 251; 77 A. L. R. 1400; 81 A. L. R. 1440.

In reviewing the opinions of this court on the subject of "Fixtures," we find that the one written by the Honorable Justice Irwin in the case of Great Western Mfg. Co. v. Bathgate, 15 Okla. 87, 79 P. 903, shows a most comprehensive study of the subject and perhaps sheds the most light on the questions involved here. The opinion in the case of Cooper v. Harvey, 16 N. Y. Supp. 660, cited therein, indicates the wide scope of "constructive annexation" by a statement of the rule as follows: "Actual annexation, which must be of a permanent character, **except in case of those articles which are not themselves annexed, but are deemed to be freehold from their use and character.** * * *" In the case of Grubbs et al. v. Hawes, 173 Ala. 383, it was demonstrated that annexation could be brought about by mere connection as differentiated from permanent attachment, in holding that "machines held in place by gravity and connected with other machines firmly fixed to the freehold are part of the realty if installed as part of the plant to which the realty is permanently devoted, capable of such use and actually so used (citing many authorities)." Therefore, our conclusion is that, though the statute names certain types of permanent attachments whereby a thing will be deemed affixed to the land, it does not purport to name all of the possible ways by which a chattel may become annexed to the realty so as to become a fixture, and consequently does not limit the application of the annexation test to affixation by the methods of permanent attachment mentioned therein. Though we give the testimony as a whole with reference to the manner that the beds and kitchen units were attached to the building in this case, the analysis propounded by the defendants, i. e., that the beds were attached merely by pivots on doors and that the kitchen units were connected to the building only by pipe fittings, still, we cannot say that these chattels were not thereby so annexed as to become fixtures and that the wording of section 11724,

supra, excludes the chattels in this case from becoming fixtures with the result of barring a consideration of the other two tests, namely, the applicability to the use or purpose for which the building was built and the intention of the defendant Mortgage Bond Company in installing them therein.

In applying the second test of fixtures, the conclusion is inescapable that the chattels in question were built for and peculiarly adapted to the use or purpose for which the building was erected. It is an efficiency apartment building. It is a matter of common knowledge that an efficiency apartment is a type of apartment that has come into wide use only recently and its name has been derived from the manner in which space is conserved therein. The wall space as well as the floor space is arranged so that it may be put to the greatest number of uses. Thus a room in the apartment that may be in general use as a living room during the day can be used as a bedroom at night because of the installation of a folding bed in one of the closets opening into said room designed with ample proportions for that purpose. Likewise, by the installation in a wall recess of a unit into which the necessary furnishings of a kitchen are compactly fitted, a space can be utilized for a kitchen that otherwise would be inadequate to meet the requirements of a kitchen. For this reason, such units of equipment have come into almost universal use in apartment buildings of the efficiency type and have been designed and manufactured with the obvious and express purpose of meeting the requirements of such buildings. And it is not only the fact that they are peculiarly adapted to the requirements of such buildings, but that such buildings fail to adequately serve the purpose and to conform to the common conception of efficiency apartments, unless they are fitted with equipment somewhat similar to the chattels in question. The point in our discussion is pertinently illustrated by the following excerpts from the excellent opinions cited in Great Western Mfg. Co. v. Bathgate, supra. Cited therein is Christian v. Dripps, 28 Pa. 271, which was the case where the chattels in question consisted of a planing machine, lathes, and vises in a machine shop or car factory. The manner of annexation was differently testified to by various witnesses, and the court said:

"* * * But the question was not whether these lathes were bolted and strapped to the floor and ceiling, for, if they were a necessary part of the machinery for carrying on the business of the machine shop, they belonged to the manufactory, whether bolted to the floor or not. That a machine shop for manufacturing railroad cars would be incomplete, if not useless, without lathes, is almost a self-evident proposition."

Also cited in the Bathgate Case, supra, is the case of Ege v. Kille, 84 Pa. 340, in which the court said:

"The criterion of a fixture depends on the business for which the premises are used. A fixture in a manufactory, mill or colliery may have no adaptation to many other kinds of business. Although not attached, yet, if it be designated for the convenience of trade on the premises, and be so used, or subject to be called into use at any time, it becomes a fixture. If the article is indispensable in carrying on the specific business, it becomes a part of the realty. Voorhis v. Freeman, 2 Watts & S. 116 (37 Am. Dec. 490), Pyle v. Pennock, 2 Watts & S. 390 (37 Am. Dec. 517)."

Like the Pennsylvania court when it concluded in the first of the above-quoted opinions that a railroad machine shop would be incomplete, if not useless, without lathes, we have concluded that an efficiency apartment, as generally constructed, is incomplete if not useless without efficiency equipment somewhat similar to the folding beds and kitchen units in question. A general hint of this fact is contained in defendant's own testimony to the effect that even when he rented some of the apartments "unfurnished," these items were not removed. As we believe that such equipment is practically indispensable in carrying on the business and purpose of an efficiency apartment building like the defendants', we must hold that the equipment involved here became a part of the realty when installed in said building.

A consideration of the transaction by which the property was subjected to the lien of the real estate mortgage further demonstrates the reasonableness of this holding. The defendants executed and delivered to plaintiff and plaintiff accepted a mortgage on an efficiency apartment building. The installation of such equipment as the chattels in question, in a building like the defendants', together with the design and construction of such a building to house such equipment, is what makes it an efficiency apartment building as distinguished from an ordinary apartment building. Without the installation of such equipment, the diminutive proportions of the individual apartments in the majority of such buildings would result in the opposite of efficiency. In other words, the plaintiff would have had no mortgage upon an efficiency apartment but for the installation of the efficiency equipment in question and upon the strength of which the mortgage and loan must surely have been made and executed. Without such equipment, the apartments could not be rented as efficiency apartments, if at all, and the mortgage security would be worth but a fraction of its value complete with said equipment.

The defendants introduced testimony tending to show that the chattels in question could be removed from the building without material injury to the latter and could be used in other efficiency apartment buildings, obviously upon the theory that the rule which was originally laid down in landlord-tenant cases would apply here. By this rule, where a tenant places upon realty chattels which can be removed without injury to the realty, they are usually deemed personalty. The application of such a rule to actions between the mortgagor and mortgagee of real estate is also discussed in cases cited in the Bathgate opinion already referred to. There the following quotations appear:

"In the case of McRea v. Central National Bank of Troy, 66 N. Y. 489, the Supreme Court of that state reviews all of the cases theretofore decided in the state, and comes to the conclusion that where a building is especially adapted for a mill plant, and for the purpose of holding the machinery used in the business, and where the machines were fastened to the floor by plates, nails, and cleats, and were attached to the gearing, it all constituted one entity, and was real property, and the fact that most of the machines were complete in this, could be removed without material injury to them or to the building, and could be put in any other building having strength to support and power to run them, would not change this character. * * *

"In the case of Rogers et al. v. Crow et al., 40 Mo. 91, 93 Am. Dec. 299, the Supreme Court of that state said: 'In accordance with this rule, it has been held repeatedly that the machinery of a manufactory is to be regarded as a part of the realty, whether it is attached to the body

of the building, or merely connected with the other machinery by running bands or gearing, which may be thrown off 'at pleasure and without injury to the freehold. In general, it may be said that, as between vendor and vendee, the purchaser is clearly entitled to everything that has been 'annexed to the freehold with a view to increasing its value or adapting it to the purposes for which it is used. * * *

"In the case of Feeder v. Van Winkle, 33 Atl. 399, 51 Am. St. Rep. 628, the Supreme Court of New Jersey uses this language: ' * * * The machinery employed, the mode of its annexation, 'and manner of its use in connection with the realty as an entirety, indicated not a temporary, but a permanent accession. The fact that the machines might be removed 'and utilized elsewhere will not, under the circumstances of this case, serve to sever them, in legal contemplation, from the freehold.' * * *

"Mr. Cobbey, in his work on Chattel Mortgages, sec. 206, says: * * * Also, in section 216, we find this language: 'Machinery placed in a calico factory, subject to a mortgage by the mortgagor, intended for use in the business, and to permanently increase the value of the factory, will pass by a mortgage of the realty, although not so attached to the building as to injure the building by removal. * * *' "

In view of what we have already said in discussing the application of the second test for determining whether or not the chattels in question are fixtures, our conclusion in applying the third test must be obvious. As the installation of equipment such as the chattels in question was indispensable in carrying out the purpose for which the defendants built the building covered by plaintiff's mortgage, they could have had but one effective intention in the installation and that is that same were to become an integral part of the building.

The wide portent of the intention test is aptly set forth in the following quotation from Ruling Case Law, vol. 11, p. 1062, par. 6:

"* * * But the test of intention is to be given a broad and comprehensive signification. It does not merely imply the secret action of the mind of the owner of the property, * * * but is to be inferred from the nature of the article affixed, the relation and situation of the party making the 'annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made; which, obviously, suggests that the other tests 'are really part of this comprehensive test of intention, and that they derive their chief value as conspicuous evidence of such intention."

This view conforms to our conception of the true criterion of the defendants' intention in installing in their building the equipment involved in the present case. Here the defendants' intention to install such equipment as fixtures was first formulated when the building was planned and designed, and later carried out when the equipment was actually installed in said building so designed and constructed as to be incomplete without equipment of the type used. Such 'an intention was so well established and so unequivocal when the equipment was installed that it could not then be changed by merely giving a chattel mortgage on said equipment.

We think that much greater weight should be given the other acts of the defendants with reference to the installation of the equipment than any inference which might be drawn from chattel mortgage transactions with strangers to this action. The alleged chattel mortgagees were never parties to this action 'and any claims which they might have upon the chattels involved are not before this court for adjudication. Consequently, while inferring nothing concerning the weight to be given chattel mortgage transactions in fixture cases between other parties and presenting different fact situations, we conclude that in the present case, the trial court's finding that the equipment in question became fixtures of the building when installed therein is not against the clear weight of the evidence nor is it contrary to the law as it should be applied thereto.

The argument upon the first two propositions in the defendants' brief attacks three of the findings contained in the trial court's judgment. They contend that the evidence does not support the court's finding that the refrigerators and gas stoves were part of a general unit or scheme and that the equipment involved is such that its removal would make it difficult to rent the apartments in the building. From our review of the evidence we find that this contention is without merit. It was undisputed that the refrigerator cabinets or boxes were merely a part of the whole kitchen cabinet and were supplied with refrigerant from a system of pipes built into the walls of the building at the time of its construction. It was also undisputed that the gas ranges

were designed for small kitchens like those of efficiency apartments to rest upon something of about the same dimensions and height as that part of the kitchen cabinets on which they stood in the instant case. The building was constructed as an efficiency apartment, exclusively, and it was undisputed that the equipment in question was commonly known as efficiency units. In our opinion, it would be next to impossible to rent an efficiency apartment, as such, without efficiency equipment. We cannot say that the finding of the trial court was clearly against the weight of the evidence, so therefore its judgment cannot be reversed because of its finding that this equipment comprises one general unit or plan. Stevens v. Patten, 174 Okla. 582, 50 P. (2d) 1106.

The other finding of the trial court alleged to be unsupported by the evidence is that all of the equipment for the entire building was purchased from one person or individual. It is true that the evidence disclosed that the refrigerator units were purchased from one dealer and the cabinets in which they were installed were purchased from another, but we are not shown wherein this fact is material to the issues or that a different finding on this circumstance would affect the conclusion reached by the trial court. As it is our opinion that the judgment of the trial court is sustained by sufficient findings of fact, we will not consider any other findings alleged to be erroneous which, if changed, would not affect the result. We think that the burden is upon the appellant to show that a change in the finding would change the conclusion, and such a rule is in complete harmony with our previous holdings that the burden, upon an appeal to this court, is on the appellant to show that his cause was prejudiced by an alleged error and that errors not affecting the verdict or judgment will not be considered by this court.

For the reasons herein given, the judgment of the trial court enjoining the removal of the efficiency apartment equipment involved herein is hereby affirmed.

OSBORN, C. J., and RILEY, CORN, and GIBSON, JJ., concur.