**FIRST NAT. BANK & TRUST CO. et al.**

**v.**

**LINCOLN POWER CORP.**

**Civ. No. 2926.**

United States District Court, E. D. Oklahoma.

Dec. 31, 1953.

Bradford J. Williams, Tulsa, Okl., for plaintiffs.

Joseph W. Foster, Poteau, Okl., for Board of County Com'rs of LeFlore County, Oklahoma, T. L. Ferguson, County Treasurer of LeFlore County, Okl., and Jack Craig, Sheriff of LeFlore County, Okl.

Vernon E. Roberts, Ada, Okl., Receiver for Lincoln Power Corp.

WALLACE, District Judge.

This case has been submitted upon a Stipulation of Facts. The sole issue is the relative priority of tax assessments made by the Oklahoma Tax Commission in 1951 and 1952 and a Trust Indenture executed in 1934.

The Stipulation of Facts provides in part:

"1. Prior to December 31, 1949, Lincoln Power Corporation owned and operated a steam power plant located near Howe, in LeFlore County, Oklahoma. Said plant was used

to generate electricity, which was sold to another public utility company. On December 31, 1949, said plant was shut down, and has not been operated since said date.

"2. All of the assets and property of said Lincoln Power Corporation, including said power plant, were and are subject to that certain Trust Indenture, dated November 1, 1934, and filed for record on May 9, 1935, in the office of the County Clerk of LeFlore County, Oklahoma, on March 13, 1936, and duly recorded * * * and said Vernon E. Roberts was appointed Receiver for Lincoln Power Corporation on June 16, 1951.

"3. All of the property of said Lincoln Power Corporation was assessed for tax purposes for the year 1951 by the Oklahoma Tax Commission, as a 'public service corporation'. Said assessment was approved by the State Board of Equalization, and the assessed valuation of all of said property was certified to the County Assessor of LeFlore County, Oklahoma, on June 13, 1951, by Wilburn Cartwright, State Auditor. * * * The total assessed valuation of all properties of all kinds as shown on said Return and Assessment was $64,350.00. Said Return and Certificate of Assessment was forwarded to the County Assessor of LeFlore County, Oklahoma, and was accepted by said County Assessor and placed on the assessment rolls of said County. The tax based on said Return and Certificate of Assessment was computed in the amount of $3,044.61, and was carried on the tax rolls of said County, as a total 'public service corporation' tax; and the items there were not separately designated in either the office of the County Assessor or the office of the County Treasurer as either real property taxes or as personal property taxes. The tax found to be owing based on said Return and Certificate of Assessment was not paid when due, and in 1952 the County Treasurer of LeFlore County, Oklahoma, caused to issue Tax Warrant No. 830, directed to the Sheriff of said County, commanding said Sheriff to levy the total amount of said unpaid taxes on chattels belonging to said Lincoln Power Corporation, and to make return of said warrant within sixty (60) days thereafter. No return of said tax warrant was ever made.

"4. For the year 1952, all of the various properties of said Lincoln Power Corporation were assessed by the County Assessor of LeFlore County, Oklahoma, at a total valuation of $58,500.00.[1]

"5. Said power plant * * * is housed in a main building which is approximately 87 feet by 56 feet high. Said building was especially planned and constructed for the purpose of housing the power generating equipment for the operation of said power plant. There are transformers mounted on poles outside the building, and a system of sprinkler pipe mounted over a spray pond outside the main building. The substructure and floor of said building is of reinforced concrete, and the building is of steel framing construction, covered with corrugated galvanized sheet iron, on the outside walls and roof. Overhead, on a steel track running the width of said building, there is a traveling crane, ten ton capacity, hand operated. On two sides of said building there are large rolling doors of sufficient size to permit the passage of large and bulky pieces of equipment. Most of the items of heavy machinery and equipment are firmly fastened by bolts to the concrete floor of said building, but may be unbolted from

1. This assessment was made as "Combined Real Estate and Personal Property Assessment List 1952."

their fastenings and removed without serious damage to either the machinery, equipment or the building.

"6. In addition to said main building, there is a small office building located on said tract of land hereinbefore described, which office building contains some office equipment and supplies. * * *

* * * * * *

"8. In 1953, at the request of the Receiver, the total tax of said Lincoln Power Corporation for 1951 in the amount of $3,044.61, was extended on the tax rolls as to each particular piece of property, by the County Assessor of LeFlore County. On or about April 18, 1953, the Receiver for Lincoln Power Corporation paid the full amount of the taxes assessed on the property of said corporation in LeFlore County, Oklahoma, for the years 1951 and 1952, excepting only the taxes assessed against said power plant site and the buildings, machinery, equipment and supplies located thereon."

All the facts in evidence before this Court indicate that the assessments involved in the instant case are excessive;[2] and, this Court, if it had the authority, would relegate the tax claims to a position inferior to that of the bondholders. However, after carefully surveying the Oklahoma authorities, the Court has reached the conclusion that the tax liens in question are superior to the claim created by the Trust Indenture. These tax liens are paramount for two reasons: First, taxes on property of "public service corporations" are by statute made prior liens; and, Second, under the Oklahoma law all the property here involved must be deemed real estate for tax purposes, and consequently the liens arising thereunder have priority.

## I

### Taxes on Property of Public Service Corporations Constitute a First Lien on the Assessed Property.

The Oklahoma legislature in section 397 of Title 68 Okl.St.Ann.1951 provided:

"Prior lien of state or subdivisions against public service corporations for delinquent taxes.—The State or any county, city, town or school district shall have and possess a prior lien against any public service corporation for delinquent taxes. * * *"

Clearly, the legislature has the constitutional power to create a tax lien which becomes prior to other mortgages and encumbrances even though said mortgages or other encumbrances came into existence prior to the legislative enactment.[3]

2. In placing a $58,500 valuation on the property of Lincoln Power Corporation located in LeFlore County the following notation was made on the assessment: "(Power plant building housing 2 Turbo Generator Units with pumps, condensers and auxiliaries and 4 water tube boilers and heaters 1330 H.P. and maintenance tools and equipment, and office building; all of said improvements having a salvage value of $50,000.00 * * *)" Significantly, the three appraisers, appointed by the Court, appraised the power plant at $18,000 on September 22, 1953; on October 5, 1953, the "personal property" of said corporation, that is, the machinery and equipment which can be removed from the power plant building, was sold at public sale for $20,000.

3. As recognized by the Oklahoma Supreme Court in Fidelity Trust Co. v. Pumroy, Sheriff, 1914, 45 Okl. 66, 144 P. 1052, 1053:
"'It is even within the constitutional power of the Legislature to enact that the tax lien shall take precedence over mortgages or other incumbrances made or given before the enactment of the law creating the tax lien and existing at the date of its passage. * * *'"; Cf. First National Bank of Comanche v. Young, County Sheriff, 1932, 155 Okl. 282, 8 P.2d 1108 where the Court in its syllabus said in part: "4. The Legislature is authorized to provide that personal taxes shall be a lien on the personal property of the taxpayer, and that the tax lien thereon shall be superior to other

■ The Court cannot sanction plaintiff's argument that the just-quoted "public service corporation" statute is inapplicable to the Lincoln Power Corporation inasmuch as during 1951 and 1952, the years the taxes in question accrued, the plant was inoperative, had no franchise and did not furnish electrical power to any one. Such inactivity does not serve to remove said corporation from within the purview of this statute where for years prior to the two tax years in question the Lincoln Power Corporation had in fact operated as a public service corporation, generating electricity which was in turn sold to another public utility company, and where for the two years in issue the corporation was carried on the tax rolls as a "public service corporation". Mere inactivity on the part of the corporation did not alter the fact that Lincoln Power Corporation was in reality a "public service corporation"; inactivity must be accompanied by other outward evidence indicating a cessation from "public service", such as a sale of assets for use in a business which is partially or entirely of a private character, or the affirmative application of corporation assets to a private venture.

## II

Where for Tax Purposes Assessed Property is Deemed Realty, the Assessment Creates a Lien Superior to a Previously Executed Trust Indenture.

■ The Stipulation of Facts in this case unmistakably implies that the equipment, fixtures and machinery in question were originally installed in the power plant building with the purpose and intention that all such machinery and equipment was to become a permanent accession; and, that although the equipment and machinery can be moved without physical damage to the building the dimension of the building indicates that the building alone is practically valueless for any purpose other than of a power plant. Thus, such equipment and machinery must be deemed realty; [4] it necessarily follows that the assessments

---

liens or claims on the personal property, whether attaching before or after the assessing of the taxes * * *."

4. In Mortgage Bond Co. v. Stephens, 1937, 181 Okl. 419, 74 P.2d 361, the question was whether or not the kitchen units and in-a-door beds became fixtures of efficiency apartments upon installation therein. The Court in reaching its conclusion enumerated three requisites used to determine when that which ordinarily is personalty becomes a part of the realty: "First, by determining whether the chattel has been actually annexed to the realty or something appurtenant to the realty; second, whether the chattel is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated; third, the intention of the party making the annexation to make the chattel a permanent accession to the freehold." 74 P.2d at page 364. In referring to each of these three tests in sequence, the Court made the following observations, each of which is applicable to the instant case. (1) " * * * though the statute names certain types of permanent attachments whereby a thing will be deemed affixed to the land, it does not purport to name all of the possible ways by which a chattel may become annexed to the realty so as to become a fixture and consequently does not limit the application of the annexation test to affixation by the methods of permanent attachment mentioned therein." 74 P.2d at page 364; (2) "In applying the second test of fixtures, the conclusion is inescapable that the chattels in question were built for and peculiarly adapted to the use or purpose for which the building was erected. * * * As we believe that such equipment is practically indispensable in carrying on the business and purpose of an efficiency apartment building like the defendants', we must hold that the equipment involved here became a part of the realty when installed in said building." 74 P.2d at page 365; and (3) "In view of what we have already said in discussing the application of the second test for determining whether or not the chattels in question are fixtures, our conclusion in applying the third test must be obvious. As the installation of equipment such as the chattels in question was indispensable in carrying out the purpose for which the defendants built the building covered by plaintiff's mortgage, they could have had but one effective inten-

in question create superior liens inasmuch as under Oklahoma law an ad valorem tax lien, once it attaches, is never inferior to the lien held by an individual, regardless of priority in dates.[5]

■ The plaintiff urges that the power plant in question comes within the express scope of section 15.4, Title 68 Okl.St.Ann.1951 and consequently must be considered "personal property" for purposes of taxation. Doubtless, if the machinery and equipment in question are considered personalty the bondholders' lien would fall ahead of the tax assessments for the reason that a recorded chattel mortgage takes preference over a tax warrant issued for personal taxes where the warrant is issued after the recording of the chattel mortgage.[6] However, this "personal property" statute cannot apply to the machinery and equipment in question for the reason that the "personal property" statute gives no indication that the legislature intended to bring "power plants" within the statute's scope. The pertinent part of this statute states:

"* * * Eighth. All machinery and materials used by manufacturers and all manufactured articles, including all machinery and equipment of cotton gins, cotton seed oil mills, newspaper and printing plants, refineries, gasoline plants, flour and grain mills and elevators, bakeries, ice plants, laundries, automobile assembly plants, repair shops, breweries, radio broadcasting stations, tractors, graders, road machinery and equipment, and all other similar or related plants or industries."

The plaintiff insists the plant in question is a "similar or related" plant or industry. The Court sees no justification for such an interpretation. Although all canons of legislative construction are valuable only as aids in determining legislative intent and are not binding rules the Court believes that in the instant statute the lawmakers were thinking of particular classes of objects and that the closing words of a more general description "and all other similar or related plants or industries" were not intended to embrace any classes not specifically mentioned by the legislature. Obviously, if the lawmakers had intended to include *all* machinery and plants there would have been no need to mention with particularity the various types of plants and equipment itemized in the statute.[7]

LeFlore County is entitled to a judgment declaring it has a first lien on the property in question for all delinquent taxes and penalties which accrued and were assessed for the years 1951 and 1952.

Counsel should submit a journal entry to conform with this opinion within ten days.

tion in the installation and that is that same were to become an integral part of the building." 74 P.2d at page 366.

5. Board of Com'rs of Garfield County v. Phillips University, 1943, 193 Okl. 222, 142 P.2d 606; Board of Com'rs of Woods County v. State, 1927, 125 Okl. 287, 257 P. 778, 53 A.L.R. 1128.

6. See Algyre v. Seminole County, 1932, 156 Okl. 251, 10 P.2d 677; First National Bank of Comanche v. Young, 1932, 155 Okl. 282, 8 P.2d 1108. It is likewise true that personal taxes arising subsequent to a real estate mortgage are inferior to the real estate mortgage. Garfield County case, footnote 5, supra.

7. Cf. Application of Central Airlines, Inc., 1947, 199 Okl. 300, 185 P.2d 919, 920, where the Court by syllabus said: "1.

The rule of construction under the maxim 'ejusdem generis' is but one phase of the application of the broader rule under the maxim 'noscitur a sociis' which is defined 'The meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it' (Broom's Legal Maxims).

"2. The rule of construction under 'ejusdem generis,' which is to the effect that general words do not explain or amplify particular terms preceding them but are themselves restricted and explained by the particular terms, is, under the rule of 'noscitur a sociis,' applicable where the general words precede the specific terms, when it is manifest that such particular terms have reference to subjects embraced within the meaning of the general words."